## Lot Gardner's Estate.   Boston Gardner's Appeal.

*Will—Revocation—Presumption—Fraud—Evidence.*

The presumption of revocation which springs out of the fact that a will which testator admittedly executed, cannot be found at his death, makes not only testator's character, condition, acts and declarations, but the conduct and interests of those who were around him from and after the date of his will, legitimate subjects of inquiry. Each of these lines of proof is important in strengthening the other, and both together seem necessary to constitute full proof. In such a case fraud being charged, the latitude of proof must be necessarily wide.

Argued Oct. 4, 1894. Appeal, No. 139, Oct. T., 1894, from decree of O. C. Clarion Co., Aug. T., 1890, No. 38, dismissing exceptions to auditor's report. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Exceptions to auditor's report.

From the report of the auditor, David Lawson, Esq., it appeared that Boston Gardner, a brother of Lot Gardner, presented a petition to the register of wills, in which he averred that Lot Gardner died on Nov. 20, 1889, having first made his will on or about Nov. 6, 1889, and that said will, after diligent search, could not be found. Attached to the petition was a paper purporting to be a copy of the will. The petitioner prayed that this paper should be admitted to probate, and that letters of administration previously granted should be revoked. Certain of the next of kin filed an answer to the petition denying that the decedent ever made a will, in the manner and form alleged by petitioner. The register certified issues of fact to the orphans' court, and that court referred the matter to the auditor.

The auditor reported, inter alia, as follows:

" Petitioners have offered testimony for the purpose of proving that the decedent thought the will was in existence until after he was so feeble that he could not have destroyed it, and that it must have been destroyed by his brother Dr. James Gardner or his sister Mrs. Nancy Fulton. There is however no direct evidence of this. They depend on a number of circum

stances which they say sustain their position. Some four or five days before his death he expressed a desire to have Mr. Summerville come ; he said he had some business he would like to have fixed, or changes made in his business or will ; and, on the witness offering to go for him, he said the roads were muddy and he thought his brother James would be there that night and he would have him write. James Gardner did come that night, and the next morning asked him if he had his business finished, and if he wanted Mr. Summerville. He replied that he did, and on that day James Gardner wrote to Summerville to come up. He says he wrote to ' come and finish Lot's will business,' and Summerville says he wrote to ' come and finish the unfinished portion of brother Lot's business which you have already commenced.' Summerville did not receive the letter until after the death of Lot Gardner, and the letter cannot be found. On the second evening before he died he said he did wish Summerville would come. On the Saturday before his death L. T. Baker went to his house for the purpose of lifting a note, and Dr. James Gardner got the key of his trunk to get the note, but the trunk was not opened. The key remained in the possession of James Gardner and Mrs. Nancy Fulton from that time until the day after the funeral, when the search was made for the will. When the undertaker was there to lay out the body, Dr. Gardner had some one help to take the trunk to another room to look for clothes to dress him in, and Mrs. Fulton opened the trunk and took out a suit of clothes. On the same morning P. H. Bailey and another witness saw Dr. Gardner standing by the window in the room to which the trunk was carried, reading a paper ; the paper was about the size of a sheet of foolscap ; he was there five or ten minutes, and could have seen the persons who saw him if he had looked. Part of the time there was an old lady standing beside him. One witness says it was not a newspaper he was reading ; the other says he cannot tell whether it was a newspaper or writing paper. On the same morning another witness says he went into the house and heard some persons in the room overhead, in the room in which James Gardner was seen standing by the window reading a paper ; he heard their voices but could not tell who they were, and does not know whether it was the voice of man or woman that he heard ; he also says that he heard them rummag-

ing among papers.   Another witness says that before the death of· Lot Gardner, Dr. Gardner intimated that there were some of the people Lot had forgotten in his will.   On the day after the funeral, when they were searching for the will, Mrs. Fulton said she had heard many stories about wills being lost and destroyed, and that she almost knew that her poor brother's will was lost; she said that if it should not be found she did not want them to blame her.   From the testimony of Summerville it would appear that this was before they looked for the will; he also says that she did not want to open the trunk because she felt positive that the will was not there; she was afraid that everything would be disturbed in the trunk.   Jesse F. Gardner also testifies that she spoke of having heard of wills being destroyed; but he says that she also said she had the key of his trunk and would open it, and if the will was there they could have it.   When they opened the trunk Summerville picked up a note or check, and Mrs. Fulton said that she had seen that paper.   Mrs. Fulton had said that she had never been in the trunk; but in her testimony she says she opened the trunk to get a suit of clothes and that she then saw a check for $1,000.

"There is some testimony that Mrs. Crow told a witness that Dr. James Gardner had said that he had a notion to burn the will, but Mrs. Crow denies having said so or that she ever heard Dr. Gardner say anything of the kind; and, if she did tell the witness, it is only hearsay and entitled to no weight. There is also some evidence that Mrs. Fulton saw some one have a paper which was said to be Lot Gardner's will.   This is too indefinite to be taken into consideration, and besides it is contradicted by Mrs. Fulton.

"This is a pretty full synopsis of the testimony relied upon by the petitioner to prove that the will was destroyed by Dr. Gardner and Mrs. Fulton; and in reply both Dr. Gardner and Mrs. Fulton deny having lost or destroyed the will.   Dr. Gardner testifies that he 'never saw any will made by Lot Gardner;' that he 'never destroyed Lot Gardner's will,' that he has 'no knowledge of any other person having destroyed it.'   He further says, 'I never knew of the existence of Lot Gardner's will except by report.'

"Mrs. Fulton says she never saw a letter of a will about the house; if it was in the trunk when she took the clothes out

she did not see it.  She further says, 'I never destroyed a will that Lot Gardner made, either before or after his death.' She says that she did not know that he had made a will, but that she knew Summerville was there, and she did not know but that was what he was doing.

"Dr. Gardner also denies that he told any one before the death of Lot Gardner that he had forgotten some of the people.

"If the evidence on part of petitioners, uncontradicted by the testimony of respondents, is sufficient to rebut the presumption that Lot Gardner destroyed his will with the intention of revoking it, the denial of Dr. Gardner and Mrs. Fulton, the only persons who had access to his papers, raises an issue that should be referred to a jury.  How is that?  They are brother and sister to the decedent and would receive more of his estate under the intestate laws than under the alleged will; but that being the case, and the fact that they had the key of his trunk, unless followed by evidence going to show that they, or one of them, destroyed the will, is of but little or no weight.

"That Lot Gardner was anxious to have Mr. Summerville may be explained by the fact that he was not strong enough to make the gifts that he intended to make, and that he may have wished to provide for them in his will; and does not prove that he may not have destroyed the will himself.  Neither is the fact that Dr. Gardner inquired who should read the will of any weight, unless it would go to prove that he thought there was a will.

"That Dr. Gardner was seen reading a paper and that a witness heard persons talking, and a noise as of some one rummaging among papers in the room where the trunk was taken to, are not evidence on which a jury could determine anything. Mrs. Fulton's conversation when looking for the key might be construed to indicate that she knew more than she was willing to admit; but, unconnected with other circumstances, it was too vague and unsatisfactory to mean anything definite.  She was at that time an old lady, and was evidently nervous and somewhat excited.

"[Your auditor is of the opinion that there is no such evidence as should be submitted to a jury,] and that, under all the testimony in the case, the presumption is that Lot Gardner destroyed his will animo revocandi, and that the petition

should be dismissed. Your auditor further recommends that the cost of this proceeding be paid by the estate of Lot Gardner, deceased."

· Exceptions to the auditor's report were dismissed by the court, and a decree entered dismissing the petition, in an opinion by CLARK, P. J.

*Errors assigned* were in dismissing exception to part of report in brackets, quoting it ; in confirming the report and in dismissing the petition.

*B. J. Reid, F. J. Maffett* and *James Craig* with him, for appellant.—If testator kept the will in his own custody and it cannot be found at his death, there is a presumption that he destroyed it himself, animo revocandi, and this presumption must be overcome before the will can be admitted to probate. But this presumption is only a slight one : Battyl v. Lyles, 4 Jur., N. S. 718.

There can be no possible doubt as to the validity of a will or codicil, duly executed, although it be destroyed in the lifetime of the testator, if so destroyed by fraud or mistake, and without his consent : Betts v. Jackson, 6 Wend. 180 ; Trevelyan v. Trevelyan, 1 Phillimore, 149 ; McBeth v. McBeth, 11 Ala. 596.

The auditor found no fact one way or the other, binding on this court : Phillips's Ap., 68 Pa. 138 ; Moyer's Ap., 77 Pa. 486 ; Youndt v. Youndt, 3 Grant, 140.

Certainty in such a case as this is not required. A moral conviction is sufficient : McBeth v. McBeth, 11 Ala. 596 ; Davis v. Davis, 2 Addams, 279.

A chain of circumstances showing on which side are the strongest probabilities, is sufficient to rebut the presumption of testator's having destroyed the will : Davis v. Davis, 2 Addams, 279 ; Patten v. Paulton, 4 Jur. 342 ; Saunders v. Saunders, 6 N. Cas. Eccl. & Mar. Cts. 520 ; 1 Gilb. on Ev. 2 ; Burrill on Circ. Ev. 23 ; Scoggins v. Turner, 3 S. E. R. 719; Cauffman v. Long, 82 Pa. 77 ; Betts v. Jackson, 6 Wend. 173 ; Jackson v. Betts, 9 Cowen, 208.

*J. E. Wood, John W. Reed, Harry R. Wilson, Frank R. Hindman* and *J. A. F. Hoy* with him, for appellees.—Appel-

lant's testimony is so vague, indefinite, and uncertain, as to a will being in existence at the time of decedent's death, that no court would be justified in submitting that question to the jury.

The burden of rebutting the presumption of revocation is on petitioner. The evidence necessary thereto is such as produces a moral conviction to the contrary.   Appellant's counsel in their argument misconceive the rule promulgated in Foster's Ap., 87 Pa. 75, and reiterated in Deaves's Est., 140 Pa. 242, that, to admit the reproduced contents of a lost will to probate, it must be shown to have been in existence at the death of the testator.

Where it is shown that the testator had his will in his custody and after his death it could not be found, the presumption is that he destroyed it animo revocandi: Foster's Ap., 87 Pa. 67 ; Church v. Robarts, 2 Pa. 110 ; Deaves's Est., 140 Pa. 242 ; Jones v. Murphy, 8 W. & S. 275 ; Stewart's Est., 149 Pa. 111.

The finding of an auditor upon the facts, which has been approved by the court below, will not be disturbed on appeal, except for flagrant error : Sproull's Ap., 71 Pa. 137 ; Logue's Ap., 104 Pa. 140 ; Bedell's Ap., 87 Pa. 510 ; Kisor's Ap., 62 Pa. 428 ; Mellon's Ap., 46 Pa. 165 ; Chew's Ap., 45 Pa. 228 ; Dellinger's Ap., 71 Pa. 425 ; Hottenstein's Ap., 2 Grant, 301 ; Landis v. Scott, 32 Pa. 495 ; Robinett's Ap., 36 Pa. 174 ; Harris's Ap., 2 Grant, 304 ; Stehman's Ap., 5 Pa. 413 ; Yohe's Ap., 55 Pa. 121 ; Brua's Ap., 55 Pa. 294.

A mere naked allegation without evidence cannot create a dispute requiring an issue : Cozzens's Will, 61 Pa. 196 ; De Haven's Ap., 75 Pa. 341.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 22, 1894 :

The burden having been on the proponents in this case to overcome the presumption of revocation which sprang out of the fact that the will, which Lot Gardner admittedly executed, could not be found at his death, made not only testator's character, condition, acts and declarations, but the conduct and interests of those who were around him, from and after the date of his will, legitimate subjects of inquiry.  " Each of these lines of proof was important in strengthening the other, and both together seem necessary to constitute full proof : " Youndt

v. Youndt, 3 Grant, 140.   The theory of proponents being that of concealment or destruction, the latitude of proof must have been necessarily wide.   Fraud is rarely capable of proof in a direct way.   "It is the chain of less direct circumstances, all pointing in the same way until there seems no other reasonable mode of reconciling them, that must usually be depended on in reaching a conclusion:" Eichenlaub v. Hall, 163 Pa. 201. The issue demanded here was whether or not there had been a revocation of the will of Lot Gardner, and was of right unless the whole evidence of the fact alleged was so doubtful and unsatisfactory that a verdict in favor of the validity of the will would not be permitted to stand.   The question was one of sufficiency of evidence.

The fact that Lot Gardner's long settled plan of testamentary disposition was expressed in this will; that he was a man of strong character and tenacity of purpose; that so short a time elapsed from the date of the will until he died; that after he found he would be unable to distribute the rest of his estate, as he had intended, during his lifetime, and up to the point of time when his physical condition rebutted any presumption of access to the trunk in which he had placed his will, he repeatedly expressed a wish that the scrivener who had drawn, would come and make "changes" in his "will," and the suspicious conduct of those who surrounded him and whose interests would plainly be subserved by intestacy, would, standing unexplained and uncontradicted, have amply justified submission to the jury.   Against these facts stand the presumption of revocation arising from nonproduction of the will, and the testimony of the witnesses whose suspicious conduct had put them on the defensive, and whose explanation was for the jury.   No one claimed to have seen or heard the testator speak of the cancellation; it rests solely upon the rebuttable presumption arising from nonproduction.

The whole evidence was such as plainly required an issue, and the case must be sent back for that purpose.

The decree refusing the issue etc. is reversed and set aside at the appellee's costs, and it is now ordered that the record be remitted to the court below with instructions to direct an issue to the court of common pleas, in due form, for the purpose of determining the disputed questions of fact.