Boston Gardner and Elmer Gardner v. James W. Gardner,
F. E. Gardner, Nancy Fulton, Sarah Cooper, Isabella
Crow, Lavina Myers, Anna L. Latshaw, F. Alson Lat-
shaw and David G. Latshaw, Appellants.

*Wills—Revocation—Cancellation—Evidence.*

On an issue to determine whether or not a will had been canceled or
destroyed by the testator it appeared that the testator made the will four-
teen days before his death, and after his death it could not be found.
The proponents offered testimony to show the deliberation with which the
will was made; that the will was placed in a trunk, the key of which shortly
passed out of testator's possession; that between the interval of the making
of his will and testator's death, testator was physically weak; that he used
expressions after the will was made consistent with its provisions and in-
consistent with an intention to die intestate, and that he expressed a desire
that the scrivener who had drawn the will would come and make changes
in or complete it. There was no evidence of any change in the circum-
stances of any of testator's relatives after the will was made. The con-
testants offered the testimony of all of the persons who surrounded the
testator from the time the will was made to his death, and who remained
in his house after his death, to the effect that they had not seen the will
and had not destroyed it. The scrivener kept the schedule from which the
will was prepared. *Held,* that a judgment and verdict for the proponents
should be sustained.

Argued March 9, 1896.   Appeal, No. 237, Oct. T., 1895, by
defendants, from judgment of C. P. Clarion Co., Nov. T., 1894,
No. 308, on verdict for plaintiffs.   Before STERRETT, C. J.,
WILLIAMS, McCOLLUM, DEAN and FELL, JJ.   Affirmed.

Issue to determine whether or not a will had been revoked
by the testator.   Before CLARK, P. J.

At the trial it appeared that the issue was framed as follows:

The plaintiffs' averment, viz: " That the last will and testa-
ment of Lot Gardner, deceased, executed by him on the 6th
day of November, 1889, was not canceled or destroyed by him
animo revocandi" shall stand as a declaration, and the aver-
ment of the defendants, to wit: " That the said will was can-
celed or destroyed by said Lot Gardner animo revocandi," shall
stand as a plea, and the case shall be tried on said declaration
and plea without other pleadings.

The facts appear by the charge of the court which was as follows:

We have to begin with the fact that the last will and testament of the testator was made and duly executed by him on the 6th day of November, 1889; that Lot Gardner died on the morning of the 20th day of November, 1889, about fourteen days after the making of the will; that the said will cannot be found and that it has been lost, concealed, canceled or destroyed. The making and execution of the will has been adjudicated by the orphans' court; the loss, concealment, cancellation, or destruction of the will is an admitted fact by the declaration and plea; therefore the principal facts in dispute are whether the will was canceled or destroyed by the testator animo revocandi, that is that Lot Gardner canceled or destroyed the will with the intent to revoke it, or whether the will was concealed or destroyed by some person or persons other than the testator, Lot Gardner.

[It is a well settled principle of law that where a will is made and the testator retains the custody of it or had ready access to it, the presumption arises if the will cannot be found after his death that he destroyed it with the intention of revoking it. In such a case the presumption is a natural one, or, in other words, it is a presumption of law; where a will is retained in the possession of the testator and after his death it cannot be found, the law presumes, in the absence of proof to the contrary, that it was done by the testator himself and with intent to revoke it. Foster's Appeal, 87 Pa. 67, fully sustains our view of the law under the latter state of facts. To the same effect is Stewart's Estate, 149 Pa. 111.

But all presumptions of this kind may be rebutted by proof of the actual facts. The burden is on the plaintiffs in this case to overcome the presumption of revocation which arises out of the fact that the will of the testator could not be found at or after his death, and in order to rebut and overcome such presumption of revocation it is incumbent upon them to produce sufficient evidence to satisfy you that the will of the testator was not canceled or destroyed by him animo revocandi; that is, that term means, gentlemen, with intent to revoke it; or that the will was destroyed or concealed by some other one than the testator.] [9]
[This makes not only the testator's character, condition, acts,

and declarations, but the conduct and interest of those who were around him from and after the date of the making of his will legitimate subjects of inquiry. Each of these lines of proof is important in strengthening the other and both together seem necessary to constitute full proof: Youndt v. Youndt, 3 Grant, 140.

The contention of plaintiffs is that the concealment or destruction of this will was done or procured by the fraud of some third person. Fraud must be affirmatively shown, it will not be presumed; it is one thing to charge a fraud and another thing to prove it to the satisfaction of a jury. Though fraud is not to be presumed it may be inferred from facts clearly proved leading to that conclusion, but it is rarely capable of proof in a direct way; it is the chain of less direct circumstances all pointing the same way, until there seems no other reasonable mode of reconciling them, that must usually be depended on in reaching a conclusion: Eichenlaub v. Hall, 163 Pa. 201.

As bearing upon the issue of revocation or no revocation evidence is admissible as to the firm and positive character and tenacity of purpose of the testator, the deliberation with which the will was made, the short period of time between the making of the will and the time when the key of the trunk passed out of his possession, his physical weakness in that short interval, his expressions of purpose after the will was made consistent with its provisions and inconsistent with an intention to die intestate, his repeatedly expressed wish that Summerville, who had drawn his will, would come and make changes in it or complete it, or make changes in his business or complete his unfinished business,—you will recollect, there is some difference between the witnesses as to what those words were,—together with the fact that he had a large sum undisposed of by the will; the absence of any evidence of any change in the circumstances of any of his relatives after the will was made, making it probable that he would so radically change his mind as to destroy his will, together with the acts or suspicious conduct of those who surrounded him and whose interests would be subserved by intestacy; and as to such evidence it is your duty to carefully examine it and give it a fair and reasonable construction or inference in rebutting the presumption of revo-

cation arising from nonproduction of the will.] [6] [But the defendants contend that they have offered sufficient evidence to overcome all of the evidence of plaintiffs going to rebut the presumption of revocation of the will, and further allege they have offered direct and positive evidence of those who surrounded the testator from the time the will was made on up to his death and who remained there after his death, who all deny having seen the will or that they destroyed it;] [8] so that it will be necessary for you to consider the evidence on both sides of this case.

Understand, gentlemen of the jury, that from the very pleadings in this case the presumption of law is that this will was destroyed with the intent to revoke it. As we said to you before, this presumption is a natural one and it remains until it is dispelled by proof to the contrary; and when we say " by proof to the contrary," we mean that you shall take into consideration all of the evidence, not only that offered on part of the plaintiffs but that offered on part of the defendants, bearing upon the same subject-matter.

We have referred to the circumstantial evidence. Circumstances to which we referred and of which evidence has been offered, may be sufficient for you to infer that the testator did not destroy this will. If anybody other than Lot Gardner destroyed this will, gentlemen, unless they destroyed it by his directions (and we do not know of any evidence of that character), why of course it would not revoke it. The last will and testament of a man is a sacred instrument; every man has a right to make his will to suit himself, and if he executes it in a legal form and manner, it has a right to stand, no court, no jury has a right to make a new will for him; but you will understand, gentlemen, that you are not to make a new will in this case; the will has been adjudicated, but you are to decide whether this will shall stand or fall, because if it was destroyed animo revocandi, that ends the will, that is if it was destroyed, we say, by the testator; if it was destroyed by some other person, through trick or fraud, the will should stand and it would not be a revocation of it, it would not be a destruction by the testator.

Now how is this, gentlemen? [You have heard the evidence upon the part of the plaintiffs; it is too voluminous for us to

go over; you have heard the evidence of 'Squire Summerville as to the making of this will; the counsel for defendants called your attention to the purpose of the cross-examination of the 'squire to affect his credibility; you will recollect his testimony and that of the other witnesses bearing upon the character of the testator; some of them say he was a firm resolute man, that it was not easy to change his mind; you will also recollect the reasons given by Lot Gardner, as testified to by Summerville, as to why he was making his will in the manner he did,—why he cut off certain of his relatives,—the number of schedules that had been made, and increasing the amount to some of them and others not increasing the amount as stated in the first schedule. Then the testimony in relation to how much he would dispose of, $18,000, by the will, and that the remainder of his money or bank accounts, notes, etc., whatever it might be, being the difference between $18,000 and $27,400, as they had counted up at that time, he would dispose of personally, himself. You will recollect as to what Summerville testifies, that Mr. Gardner would get to talking about some of those poor relatives and then he would say, " Well, it will not do, I can't give them all, it will not do." After making out several schedules, we do not remember whether four or five, or perhaps it was six, Summerville testified to, we believe that was the way, why they got a schedule made out; and you will remember how that schedule, upwards of a month after the death of Lot Gardner, was discovered, what was communicated and when it was communicated to a party by the name of Craig.] [7]

Now, gentlemen, you have the theory of the plaintiffs in this case and the theory of the defendants; you have heard the counsel sum up on both sides and they have gone over the evidence pretty fully; you are the judges of this evidence, it is for you; but undoubtedly there are contradictory statements and it is for you to reconcile those statements. No witness has been directly impeached that we recollect of; the credibility of the witnesses is entirely for you and you will consider the interest or want of interest of the different parties in this case, their manner of testifying on the witness stand, their candor or want of it. As we stated to you before, you will have to reconcile these contradictions and you must be reasonable in coming to

a conclusion as to whether a witness is testifying to the truth or not; you must take the whole of his testimony; it is not fair to single out a part of a sentence or a clause and to say that he has been successfully contradicted when if you would take the whole of his testimony it would really tell a very different story. Gentlemen, you take this case, consider all of the evidence carefully and if you are satisfied that there is a preponderance of the evidence in favor of the plaintiffs, your verdict should be, " We find for the plaintiffs;" if you are satisfied that the preponderance of the evidence is for the defendants, your verdict should be, "We find for the defendants."

Verdict and judgment for plaintiffs.    Defendants appealed.

*Errors assigned,* among others, were (6–9) above instructions, quoting them.

*D. F. Patterson,* with him *J. E. Wood, Harry R. Wilson, Frank R. Hindman, J. A. F. Hoy* and *C. Z. Gordon,* for appellants.—The tendency of the charge was to mislead the jury: Bisbing v. Third Nat. Bank, 93 Pa. 79; Fawcett v. Fawcett, 95 Pa. 376; Lehigh Valley R. R. v. Brandtmaier, 113 Pa. 610.

*B. J. Reid,* with him *W. A. Hindman, W. H. Hockman* and *F. J. Maffett,* for appellees.—In charging the jury it is largely within the discretion of the trial judge as to how much detail shall be entered into; how minute the reference to the testimony shall be, and how extended the discussion: Fowler v. Smith, 153 Pa. 639; Borham v. Davis, 146 Pa. 72; Reeves v. D., L. & W. R. R., 30 Pa. 460.

PER CURIAM, October 5, 1896 :

We find nothing in this record that would justify us in sustaining either of the assignments of error; nor, do we think that any of the questions therein presented require special notice. The case was carefully tried and fairly submitted to the jury, and their verdict in favor of the plaintiffs should not be disturbed.

Judgment affirmed.