(71 Misc. Rep. 382.)

## In re NOKES' ESTATE.

### (Surrogate's Court, Kings County.   March, 1911.)

WILLS (§ 195*)—"CODICIL"—PROBATE—REVOCATION OF WILL.

A "codicil" is some addition to or qualification of a will, and is dependent for its life and force on the life and force of the will, and cannot be admitted to probate where the will to which it refers has been revoked.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 491; Dec. Dig. § 195.*

For other definitions, see Words and Phrases, vol. 2, pp. 1240, 1241.]

In the matter of the application for the probate of the alleged last will of Ann Nokes.  Probate denied.

Francis B. Mullin, for petitioner.

John C. L. Daly (Francis A. McCloskey, of counsel), for administrator, respondent.

KETCHAM, S.   The finding will be that the will was destroyed by the testatrix with the intent and for the purpose of revoking the same.

The question remains whether an instrument, duly executed and published as a codicil to this will, may be given probate.  It calls itself a "codicil."   It "confirms a prior and immediately preceding will," except as in itself directed.   It adds a single legacy to those which the will contained.   It directs that the legacy thus added "shall be first paid, before any others, after the payment of just debts, as heretofore [i. e., by the will] directed."   It appoints no executor.

It appears from the attestation clause and the testimony of the subscribing witnesses that it was published and declared by the testatrix "to be a codicil to her last will and testament."   At the time of its execution, the will to which it referred was in existence, and had been duly executed and attested.

The accepted definition is that a codicil is some addition to or qualification of a will, and is dependent for its life and force upon the life and force of the will to which it is an adjunct.   It must, therefore, in general, fail of any operative value if the will has been revoked.   If it be conceivable that an instrument self-called a "codicil" may be found to be a will and may be afforded testamentary force and probate, in the absence of the will to which it relates, such result can only be reached upon proof that, despite its appearance and the presumptions which surround it, the instrument is actually an independent and self-sufficient will.

This proof, under a state of law which might permit it, would be sought in the circumstances, conduct, and declarations of the testator and the nature of the instrument and of the prior will.   Upon such inquiry, codicils have been given separate probate as wills in England.  Since the English statute of wills of 1837, codicils have been admitted in England in the absence of the will to which they related, but without determination as to whether they were capable of independent force and fulfillment.   In Pennsylvania, under a statute which requires

no publication by the testator or knowledge by the witnesses of the nature of the paper, a codicil, which was "capable of subsisting independently of the will" "amounted to a revocation of the will," and "professed to make and effectually did make a complete disposition of the testator's whole estate," was admitted to probate as the only will. Smith's Estate, 2 Pa. Co. Ct. 626.

But the learning to be gathered from other jurisdictions is without value, for in our state the instrument, in order to take rank as a will, must be declared as such by the testator. If such declaration be essential to its character, every other test is excluded. In England, before 1838, codicils, so called, were admitted to probate, or rejected, in an irresolute fashion from which no rule can be extracted, and which, according to Lord Penzance, had involved the subject in "doubt and indistinctness." Black v. Jobling, L. R., 1 Prob. Div. 635. In 1837, the statute of wills (St. Vict. c. 26, § 20) provided as follows:

"No will or codicil, or any part thereof, shall be revoked otherwise * * * than by another will or codicil executed in manner hereinbefore required by some writing declaring an intention to revoke the same and executed in the manner in which the will is hereinbefore required to be executed * * * or by the burning, tearing, or otherwise destroying the same by the testator or by some person in his presence and by his direction, with the intention of revoking the same."

It was held that the intention of this statute was to do away with all implied revocations, including such as might be implied from the destruction of a will to which the codicil related, and to provide that no codicil should be revoked except by one of the methods therein prescribed. A codicil presented for probate without its will was, therefore, admitted to probate, in the absence of proof that it had been revoked in accordance with the statute. Black v. Jobling, supra. This ruling has generally been followed. Goods of Coulthard, 11 Jur. (N. S.) 184; Gardner v. Courthorpe, L. R. 12 Prob. Div. 14; Goods of Clement, L. R. 12 Prob. Div. 214.

None of these decisions controlled by the wills statute involved the proposition that the paper admitted to probate was capable of operation as an independent will. In each instance the effect and application of the instrument were left for future determination; and it still remained possible that the paper, though admitted, might be found to be simply a codicil, capable of no influence upon the estate to which it related, unless the will to which it was incident could be also probated.

Before the Victorian statute, the testamentary act required no publication and no knowledge by the witnesses of the nature of the instrument, and under that statute no publication was required; so that to this day, in England, the testamentary act becomes efficient without declaration of the testator as to whether the instrument is a will or codicil. Obviously, wherever the testamentary act was valid and complete without publication by the testator or knowledge by the witnesses of its nature, its character, either as a will or codicil, might properly be the subject of evidence as to the surroundings and the intention of the testator.

Our statute requires, among the things necessary to the execution of every last will and testament, that the testator "shall declare the instrument to be his last will and testament" (Decedent Estate Law [Consol. Laws 1909, c. 13] § 21), and it needs no argument that, without conformity in this respect, no instrument can be or become a will. There is no provision in the statute for a codicil nominatim. There is no warrant for the making of a codicil, except in section 34 of the decedent estate law as to "revocation and cancellation of written wills." That section, so far as applicable, is:

"No will in writing  *  *  *  nor any part thereof, shall be revoked, or altered, otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed."

The language of sections 21 and 34 of the decedent estate law, so far as quoted supra, was introduced into the law at the time of the revision of 1828 and has remained unimpaired at all times since. The revisers proposed regulations for the execution of wills which did not embrace any requirement that the will should be declared or published, and section 40 of article 3 of this statute (Rev. St. [1st Ed.] pt. 2, c. 6, tit. 1) touching the publication of wills was substituted by the Legislature in the form in which it has been since preserved. There was thus imposed upon the revisers' views the affirmative purpose that the instrument could not become a will unless the same was published in that likeness by the testator, and that no alteration thereof could be made except by another instrument published as a will or published as a codicil. It is impossible to escape the conviction that the scheme of these enactments with respect to successive instruments of testamentary nature was that a testator, having a will, might make free and ample choice between two modes of alteration, but that his choice could not be availed of in such tentative fashion that the second instrument might remain for his lifetime of fluid character, ready to operate as a codicil, if the former will appeared for probate, and as a dominant will, in case the former will could not be admitted. Under the choice thus afforded, the second paper must be whatever the testator called it when he made it.

When these provisions were introduced into the Revised Statutes, the law of England was, at least in respect to personal property, destitute of any of the safeguards which modern thought and exigency demand for the secure record of a decedent's purpose respecting his estate. As to the law of probate and distribution, the condition in this state was then described by the revisers in these words:

"In this state we have contented ourselves with re-enacting the British statutes with few and slight alterations; and we have piled up the various and discordant acts of the British Parliament without any attempt to reconcile them, to remove their ambiguities, or to remedy their defects."

At the time of these enactments, the English law presented the "doubt and indistinctness" observed by Lord Penzance as to whether an instrument which followed a will, but physically survived it, was itself a will entitled to probate or a codicil which had perished with

the will. Two of the states, New Jersey and Louisiana, then maintained the requisite of publication. In no other English-speaking jurisdiction was the rite essential to the validity of a will, though it was recognized by lawyers as a useful means to show the integrity of the transaction.

Can it be doubted that the Legislature, engaged in 1828 upon the reform and codification of the general laws of the state, took warning from the incertitude of the English system and adopted from sister states the requirement of publication, with the conscious purpose, among others, that with respect to successive instruments of testamentary nature the testator, already having a will, must determine by his own declaration the character of any succeeding instrument? In this view of the statute, the only alternative instrument for which the statute makes room must be "executed with the same formalities with which the will itself was required by law to be executed.":

If it be declared as a will, it may take effect as an independent testament, capable of probate alone, if the former will not thereby revoked be rendered incapable of probate. As many wills as may be desired may exist, each with the force of an independent instrument, if all others fail. If all survive, they may all be proved, to the end that the testamentary purpose may be derived from their construction in the aggregate. But no instrument can be a will unless the testator shall have declared the same to be his last will and testament.

In jurisdictions where the instrument does not depend upon publication for its character as a will, inquiry may be permitted as to whether the paper, self-nominated a codicil, is "capable of subsisting independently of the will to which it refers," or whether "it professes to make a complete disposition of the whole estate" (Smith's Estate, supra), or whether, from the contents of the several testamentary documents, it can be seen that, contrary to the presumption, the revocation of the will did not operate impliedly to revoke the codicil also. Gelbke v. Gelbke, 88 Ala. 427, 6 South. 834; Crafts v. Hunnewell, 129 Mass. 220.

But such examination of the transaction is excluded by a statute of which the effect, and therefore the design, is that the nature of the testamentary paper shall not be the subject of construction, either of its contents or the contents of the paper with which it is associated, or of extrinsic proof as to the testator's intention, but shall be irrevocably impressed upon it and placed beyond the vicissitudes of proof or construction by the declaration which its author shall make as to its character at the time of its execution. No paper, therefore, which is published as a codicil, and which is declared by the testator to be only an incident to his will, can be admitted as a primary and self-sufficient will.

It has been held that a paper declared upon its face to be a codicil and published as such can be admitted to probate as a will, where the paper to which it refers as the will intended to be thereby affected was attested by only one witness, and therefore never came into existence. Matter of Emmons, 110 App. Div. 701, 96 N. Y. Supp. 506. The court there said:

"A codicil executed according to the formalities of the statute is a final testamentary disposition, and, if there be an existent and complete will, it takes it up and incorporates it. Matter of Campbell, 170 N. Y. 84 [62 N. E. 1070]. If, however, there be no such existent and validly executed will, and if the codicil be so complete in itself as to be capable of execution, then it must necessarily stand and be given the force of valid testamentary disposition."

Although, in the case cited, there was no discussion of the statutory command that the instrument, to be a will, must be declared by the testator to be his will, the decision possibly involved the conclusion that obedience to that command was not essential. But the ruling need not be extended beyond a codicil made in relation to a paper which had no testamentary existence, since that was the only fact to which it applied. It does necessarily control the present case, where the instrument under examination was declared by the testator to be secondary to a former document of ample validity and existence.

The propounded paper was not declared as a will. Without that solemnity it could never become one. It was published as a codicil, and was by that act denied any legal meaning or value, except such as it might derive from the former will and might enjoy in connection therewith. It cannot be granted probate when the instrument by which it was supported has been revoked.

Probate denied.