## O'Neill's Estate

*Webster S. Achey,* for appellant.
*Ross & Ross,* for proponent.

KELLER, P. J., September 3, 1946.—This matter is before the court on appeal from the decision of the Register of Wills of Bucks County and a citation awarded upon a petition of James J. ONeill, appellant and contestant, directed to all the parties interested in the above-named decedent's estate, requiring them to show cause why the appeal should not be sustained, the decree of the register set aside, and an issue devisavit vel non directed to the court of common pleas for trial of the following question of fact: "Whether or not the alleged paper writings dated February 13, 1940, December 3, 1940, and January 15, 1944, is the last will and testament and codicils of the said decedent?"

In support of his petition for citation, contestant alleged that the three certain paper writings, the first dated February 13, 1940, alleged to be the last will and testament of above-named decedent, the second dated December 3, 1940, and the third dated January 15, 1944, alleged to be codicils thereto, which were admitted to probate by the register aforesaid as the last will and testament of above-named decedent on June

16, 1944, and letters testamentary thereon granted to Thomas Ross, Esq., are not the last will and testament of said decedent but that the said original will of February 13, 1940, and the original codicil dated December 3, 1940, were destroyed and revoked by testator in his lifetime, and that the instruments and writings, so probated by the register, are not the last will and testament of said decedent.

An answer was filed in which respondents admit that the original will of February 13, 1940, and codicil thereto of December 3, 1940, were missing after the death of testator and have not since been found but they deny that they were revoked by testator in his lifetime and aver that the original of the second codicil dated January 15, 1944, was duly probated and expressly recognizes and affirms the aforesaid will and first codicil; that the evidence received by the register of wills establishes the will and both codicils as testator's last will and testament; and that there is ample evidence and legal justification to sustain the probate.

The law is well settled in Pennsylvania that an appeal from the register of wills brings up nothing but the record and that the proceedings are de novo and are heard on agreed statement of facts or on testimony taken before the orphans' court in the usual way which from such evidence determines whether an issue should be framed. Section 20(e)1 of the Orphans' Court Act of June 7, 1917, P. L. 363, 20 PS §2561, provides that on appeal from the decision of any register of wills, "the orphans' court shall hear the testimony de novo, unless all parties appearing in the proceeding shall agree that the case shall be heard on the testimony taken before such register. . . ." This means that "the orphans' court shall not arrive at a decision on the basis of the testimony offered before the register, but shall hear afresh all evidence that either party may desire to present . . ." pass upon the

facts, and either dismiss petition, grant an issue in case of substantial dispute, or set aside the probate: Szmahl's Estate, 335 Pa. 89, 92; Wagner's Estate, 289 Pa. 361, 367; Bobbitt's Estate, 30 D. & C. 659, 664, affirmed, 131 Pa. Superior Ct. 386, 390; Marcus' Estate, 34 Berks 105.

At the hearing upon the appeal and citation and for the purpose of taking testimony in the instant case on December 17, 1945, proponent offered in evidence the record of probate, including copies of the will and first codicil, the original codicil of January 15, 1944, hereinafter referred to as the second codicil, affidavits, and opinion and decree of the register, and then rested, thereby meeting the burden of proof imposed upon him by the law to establish a prima facie case. The burden then shifted to contestants to go forward with evidence to overcome the prima facie case thus established: Keen's Estate, 299 Pa. 430, 440; Plotts' Estate, 335 Pa. 81. In Keen's Estate, supra, in which the court suggests a question of practice on appeal from the register's order probating a will, Mr. Justice Walling said:

"In such case, it is sufficient for the proponents in the first instance to offer the register's record of probate, including the will; thereupon, the burden of proof shifts to the contestants. See 1 Rhone Orphans' Court Practice (3rd ed.), page 737; 28 R. C. L. 145. 'Until a prima facie case against a will has been made out by the contestant they (the proponents) may rest upon the proof before the register, whose decree admitting the will to probate stands until duly reversed': Whitaker's Est., 10 W. N.C. 139, opinion by Judge Penrose."

Again, in Szmahl's Estate, supra, Justice Stern says, on page 93, with reference to the burden of proof and effect of a decree of probate in an appeal from the register to the orphans' court:

"We hold, therefore, that the proponent may stand upon a decree of probate as sufficient to sustain the will unless testimony is produced by either party or at the instance of the court, but if such testimony *is* produced the probate is not to be accorded any evidential value, except by agreement of the parties. In the present case, no testimony whatsoever having been offered, the probate stands as a binding judicial decision in rem."

In Geho's Estate, 340 Pa. 412, Mr. Justice Maxey in discussing the proper practice upon appeals from a register's probate says on pages 415-16:

"Proof of the fact of the probate of a will does not upon an appeal from the probate have any *evidential* value, except as stated in Szmahl's Est., (supra), but it does have *procedural* value, for it raises a presumption of the will's validity and this presumption becomes a challenge for *proof* addressed to the challenger of the will. We said in Watkins v. Prudential Ins. Co., 315 Pa. 497, 173 A. 644; 'Presumptions are not evidence (p. 500). . . . They are not fact suppliers; they are guide posts indicating whence proof must come (p. 504) . . .

"The proper practice upon appeals from the probate of a will is to offer the register's record of probate, including the will. Then the burden of coming forward with proof shifts to the contestants. See Plotts' Est., 335 Pa. 81, 5 A. 2d 901. This burden of proof does not shift back to the proponents of the will until the contestants have offered evidence of such probative value in support of their allegations against the will, that if it stood uncontradicted it would upon an issue being awarded support a verdict against the will. See Hile's Est., 310 Pa. 541, 544." See also Henes v. McGovern, Admr., 317 Pa. 302, 310, and Ash Will, 351 Pa. 317, 320.

After proponent had offered the record of probate as aforesaid, appellant or contestant, who had not ap-

peared or been represented at the hearing before the register offered, as evidence in support of his appeal and citation, the testimony, as originally offered by proponent and received by the register, and it was stipulated and agreed between counsel for appellant and proponent that it should constitute the testimony upon which the court shall base its findings and conclusions and thereby obviate the necessity of taking testimony de novo.

From this testimony we find the following material facts: Patrick J. O'Neill, testator, died on May 3, 1944, aged about 80 years and a resident of the Township of Lower Makefield, County of Bucks. He was a widower and left to survive him, as the persons who would be entitled to share in his estate under the intestate laws, the following: James J. O'Neill, a nephew, appellant and petitioner for citation and claimant to the entire estate of decedent under the intestate laws; Bessie O'Neill and John J. O'Neill, both cousins of decedent and residents of Yardley, Pa.

On February 13, 1940, testator executed a last will and testament which his attorney, Thomas Ross, had prepared for him in accordance with his instructions. This will was witnessed by Mr. Ross and his then secretary, Louisa S. Whitten. Although prepared in duplicate, testator executed only the original; the duplicate copy was conformed with the original and retained by Mr. Ross in his files. Testator took the original along with him. By the terms of his said will, testator, with the exception of several pecuniary bequests, including gifts to two churches and for masses, bequeathed his entire estate to his wife, Mary C. O'Neill, and made her the sole executrix. Subsequently, on December 3, 1940, his wife, the said Mary C. O'Neill having died, testator executed a codicil to his said will. As in the case of the original will, this codicil was also prepared by his attorney, in duplicate. The

original copy thereof was executed by testator and the conformed copy thereof was retained by his said attorney. This codicil was witnessed by Louisa S. Whitten, aforesaid and John Ross, Esq. By this codicil, testator, after reaffirming certain portions of his will and revoking the residuary clause thereof, made new provisions for the distribution of his residuary estate and appointed his attorney, Thomas Ross, Esq., as his sole executor. Following the execution of this codicil, testator took the original copies of both the will and codicil with him. Approximately four years thereafter, to wit, January 15, 1944, because of changed conditions, testator had a second codicil prepared by his attorney at the latter's office in Doylestown, Pa., which he then and there executed and had witnessed by John Ross, Esq., who had prepared it, and the latter's secretary, Katharine R. Sergeant. This codicil was left with his attorney aforesaid for safe keeping. The testimony does not disclose whether a conformed copy thereof was made and delivered to the testator for his reference. It does appear, however, that at the time this second codicil was made testator did not have the original copies of the will or of the first codicil with him but stated that they were in his possession at his home. In the second codicil, testator declared that it was a codicil to his last will and testament dated February 13, 1940, and the codicil thereto dated December 3, 1940. Aside from this declaration, there was no further reference to these instruments and its provisions were confined to an absolute devise unto Bessie O'Neill, testator's cousin and housekeeper for many years, of his house and farm called "Garry-Owen", located in Lower Makefield Township, Bucks County, free of all estate and transfer inheritance taxes with direction that they be paid out of his estate and in relief of the devisee.

After the execution of the second codicil, testator paid no further visits to his attorney's office in Doyles-

town, nor was there any contact or correspondence had between them. Immediately after testator's death in May 1944 his housekeeper, Bessie O'Neill, telephoned Mr. Ross, informing him of the fact, whereupon, the latter, who was the executor, and being unable to attend testator's funeral, arranged with Miss O'Neill for a meeting at testator's home in Yardley shortly thereafter. In the course of the conversation, he asked Miss O'Neill if she knew where the will and codicil were and informed her that he had the second codicil of January 1944 in his possession. Miss Bessie O'Neill replied that she had it, referring to the will. Afterwards, when Mr. Ross visited testator's home and asked Miss O'Neill to produce the will she informed him that she could not find it. When reminded that she had previously told him she had it, she explained that she thought it was there but that upon making a search she could not find it. She again searched the safe in the presence of the executor, Mr. Ross, and together they examined the papers that were there but the will and codicil were missing. Further searches in the house, as well as at the First National Bank of Newtown and at Yardley National Bank, with which institutions testator had dealings in his lifetime, as well as in testator's office files, failed to reveal the will or codicil, as did further searches in the attorney's office and their safety deposit box in the Doylestown Trust Company where they had filed certain papers belonging to their clients, including a number of wills. Mr. Ross testified that after an exhaustive search in all places where they felt the will might have been placed, they were unable to locate the will or codicil and that he did not know what became of them. Bessie O'Neill corroborated Mr. Ross as to the searches made and the failure to find either the will or the codicil. She further stated that Mr. O'Neill had never said anything to her about having revoked or destroyed the will, or any paper like a will; that she did not destroy it and

had no idea where it might be; that testator had been ill for about four days prior to his death but was able to come downstairs every day; that testator had informed Miss O'Neill on a number of occasions, the last time having been about a month before he died, that he had a will and that she was a good girl to him for having taken care of him and that he had taken care of her. Upon cross examination, she further testified that testator kept the safe locked; that she did not recall ever having seen the will; that she was the only person who knew the combination to the safe; and that she opened it when the executor, Mr. Ross, was there and locked it again after he left the house. The testimony further revealed that between the time of testator's death and the funeral, a number of relatives and friends visited the house, including contestant, James J. O'Neill, and friends from New Jersey and Philadelphia, and that during this period certain articles, including several clocks, disappeared from the house, one of which was later located in Princeton, N. J.

From the foregoing summary of the undisputed testimony, it will be noted that the basis of this controversy is a lost will of testator and the first codicil thereto which contestant contends was erroneously and illegally probated. A "lost will" is a will which has not been revoked by testator but which cannot be produced by admission to probate. There are few problems facing the parties and the court having to do with the administration and distribution of decedents' estates that are more difficult of solution than those arising out of various facts affecting lost wills. There are, however, certain well-settled principles of law which govern the probate of missing wills. Among these, which are pertinent to the circumstances involved in the present appeal, are: First, that the probate of a will presupposes its existence and that it must be produced or its nonproduction satisfactorily explained

or proved at the time the will is sought to be probated. Second, a will which has been lost or destroyed, either after testator's death or, accidently or fraudulently, during his lifetime, may be established or admitted to probate, as by admitting a properly proved copy or duplicate of the will to probate by proceeding in accordance with the statute, in the court having jurisdiction thereof, and on competent and sufficient proof of its execution, loss or destruction, and contents: 68 C. J. 916, §651; 2 Page on Wills 373, §707 et seq., id., page 763, §897; Weber's Estate, 268 Pa. 7.

In order to probate the original instrument as a lost will without offering the original, proponent must account for his failure to produce it. This is necessary for two reasons, the first of which grows out of the rule of evidence to the effect that the best evidence, of which the case is, in its nature, susceptible, must be produced. The second reason involves the question of the law of wills. If a will or codicil, known to have been in existence during testator's lifetime, and in his custody, or where he had ready access to it, and testator was physically and mentally capable of destroying the instrument with the intent to revoke it, it will be presumed, if the instrument cannot be found, and no explanation is given of its absence, that testator destroyed it with the intention of revoking it. On the other hand, if testator did not have ready access to it, either because of the place in which the will was deposited or because of his own physical condition or if he was mentally incapable of revoking the will at a time at which the will was still in existence, such presumption does not arise. This presumption of revocation which springs out of the fact that a will which testator admittedly executed cannot be found at his death has been held in some jurisdictions to be a presumption of fact, while in other jurisdictions it is said to be a presumption of law. In Pennsylvania our courts

have ruled that where a will is made and testator retains the custody of it or had ready access to it, a legal presumption arises if the will cannot be found after his death, that he destroyed it with the intention of revoking it and no declaration of intent, condition, and circumstances of family are sufficient to rebut this presumption: 68 C. J. 992, §759; 2 Page on Wills 728, §§876 and 897; Baptist Church v. Robbarts, 2 Pa. 110; Foster's Appeal, 87 Pa. 67; Gardner v. Gardner et al., 177 Pa. 218, 221; Fallon's Estate, 214 Pa. 584; Weber's Estate, supra. See also Watkins v. Prudential Ins. Co., 315 Pa. 497, 500, as to the nature and effect of presumptions.

Whether the presumption that a lost will was destroyed by testator is one of law or of fact seems to make little difference in the final outcome. In either case, such presumption is not conclusive and it may be rebutted by showing that the will was not destroyed by testator or by his direction and in his presence; or that, if he did destroy it, he did not intend thereby to revoke the will. This presumption of revocation stands in the place of positive proof and the court will not weigh the probability of decedent's wishes or otherwise speculate as to the motives which may or may not have influenced him in the direction of intestacy: 68 C. J. 993, §759; Collyer v. Collyer et al., 110 N. Y. 481, 18 N. E. 110. The burden of overcoming this presumption of revocation rests upon proponent by proof which must be positive, clear and satisfactory: Michell v. Low et al., 213 Pa. 526, 534; In re Harrison's Estate, 316 Pa. 15, 18; Dalbey's Estate, 326 Pa. 285, 288, and cases therein cited; 2 Page on Wills, supra, §§876 and 890. In some jurisdictions the proof must exclude every presumption of revocation. See In re Calef, 111 N. J. Eq. 355, 162 Atl. 579. The evidence necessary to overcome the presumption of revocation may be circumstantial as well as direct and the courts have been

very liberal as the latitude of proof in such cases, more particularly where fraud is suggested, as in the instant case, must be necessarily wide. It makes not only testator's character, condition, acts and declarations, but also the conduct and interests of those who were around him from and after the date of his will, legitimate subjects of inquiry. It follows, therefore, that under such circumstances, evidence will be received of the fact that hostile heirs had access to testator's will. The mere fact, however, that there was opportunity for the disinherited heirs to destroy the will, together with a motive, will not create any presumption that the instrument was destroyed by another person without testator's knowledge or authority since that would be presuming a wrong or fraud: 68 C. J. 992, §759; 2 Page on Wills, supra, §§876 and 896; Gardner's Estate. Gardner's Appeal, 164 Pa. 420, 425; Hodgson's Estate, 270 Pa. 210.

Proponent in the proceeding before us offered no proof to overcome the presumption of revocation other than that which he submitted to the register and which was wholly circumstantial and largely conjectural. It is his contention that the existence and proof of execution of the second codicil dated January 15, 1944, admittedly not revoked, conclusively negatives and overcomes any presumption that the will and first codicil, not being found, were destroyed by testator or at his direction animo revocandi. Further, that this codicil republished the will as well as the first codicil and established all three instruments as decedent's will as of the date of his death. We are familiar with the principle that a codicil, duly executed, operates as a republication and revival of a prior will so as to make it speak from the date of the codicil, as well as with the provisions contained in the Wills Act of June 7, 1917, P. L. 403, sec. 9, 20 PS §221, that every will shall be construed with reference to the real and

personal estate comprised in it to speak and take effect as if it had been executed immediately before the date of the death of the testator, unless a contrary intention shall appear by the will. See Tyson's Estate (No. 1), 47 Pa. Superior Ct. 108; Neff's Appeal, 48 Pa. 501. It will be recalled that at the time the codicil was executed the will and first codicil were in physical existence, which was an essential prerequisite for their revival by the second codicil. After testator's death, so far as the evidence discloses, these instruments were no longer in existence and, as we have already noted, a legal presumption was created that they were revoked by testator during his lifetime. The revocation of the originals necessarily carried with it a revocation and cancellation of the duplicates or copies thereof: Bates Estate, 286 Pa. 583. This presumption, not having been overcome, in our opinion, by sufficient and competent proof, we must accept it as an established fact and that leaves the second codicil without any will or prior codicil to republish.

Our courts have long recognized that where a will has been partially lost or destroyed, the court may admit to probate those parts or provisions which are sufficiently proved when they are separable from the remainder and independently enforcible. This rule, however, does not apply where the provisions of the will and codicil are of an inseparable nature: See Wikoff's Appeal, 15 Pa. 281, Smith's Estate, 2 Pa. C. C. 626, and Ramsey's Will, 2 Dist. R. 425, in which last cited case the court ruled in effect that a testator may revoke such parts of his will as he pleases by any of the methods prescribed by the act of assembly, if what remains is dispositive and contains the formal requisites of execution prescribed by the act. Although there is authority for holding that the revocation of a will revokes all the codicils thereto, especially those which depend upon the will for interpretation and execution

(see Matter of Nokes, 71 Misc. 382, 130 N. Y. Supp. 187), we are of the opinion that the presumption of revocation in the instant case is not applicable to and does not affect the second codicil, because it was not in the custody of testator during his lifetime and, so far as it appears, he had no copy of it in his possession. Neither are we convinced that the failure to dispose of this codicil is, of itself, sufficient, under the circumstances, to overcome the presumption of revocation of the missing instruments. This codicil is self-sustaining, in that it is a separate testamentary instrument and not necessarily dependent upon the proof or establishment of the will and first codicil to which it relates; nor are its provisions so involved with those of the will and prior codicil as to render it incapable of independent operation. Consequently, there would seem to be no valid objection to its being probated as a separate testamentary instrument.

With reference to awarding an issue upon the question submitted by petitioner, suffice it to say that the question proposed, being one of fact and of law, is not a proper subject for an issue devisavit vel non. Our appellate courts have repeatedly declared that the question to be determined in an issue devisavit vel non must be limited to matters of fact only. Hence, a question as to whether or not the paper offered for probate is the will of decedent is not a proper subject for such an issue: Duffel's Estate, 317 Pa. 214; Tranor's Estate, 324 Pa. 263, 266-7; Buhan, Exec., et al. v. Keslar et al., 328 Pa. 312, 314. The petition for the issue must, therefore be dismissed.

Furthermore, for reasons hereinbefore stated, it is our conclusion that proponent has failed to overcome by sufficient, positive, clear and satisfactory proof, the presumption of revocation by testator in his lifetime of his will and first codicil; that the register of wills was in error in admitting said instruments to probate;

and, therefore, the appeal must be sustained and the probate set aside.

And now, to wit September 3, 1946, the request for an issue devisavit vel non is declined and the petition dismissed; the appeal is sustained and the probate of the will and codicils is set aside.