## TRAME v ORPHEUM THEATRE CO

Ohio Appeals, 1st Dist, Hamilton Co

Decided May 31, 1938

a judgment for $12,000.00, awarded by the Common Pleas Court of. Hamilton County, for personal injuries received by a customer of a moving picture theatre, who, after witnessing a show on the night of October 23, 1934, went to the ladies' toilet or rest room on the mezzanine or balcony floor, the floor of the toilet room being six and one-half inches above the corridor floor, stayed in the toilet room not to exceed five minutes, and, as she was leaving, being temporarily oblivious of the off-set at the toilet door, proceeded as though it was not there, lost her balance, fell heavily to the floor, and broke the femur of her left leg near the hip joint, resulting in great pain, confinement in bed for many months, causing a nervous condition to develop that still persists, and subjecting her to more than $4000.00 expense for physicians, nursing and hospital services, and loss of wages at the time of trial. The evidence shows that the amount of the judgment is not excessive, if liability exists.

The plaintiff claims that her injuries were caused by the negligence of the defendant in the following respects:

"There were insufficient lights in and about said hallway leading to and from said toilet room, in that said insufficient lighting created deceptive shadows which made it very difficult for the plaintiff to see the conditions then and there existing at the time; in that defendant violated the laws of the State of Ohio in not having this portion of the theatre properly and adequately lighted; in that the door into said toilet room was in too close proximity to the wash stand in said room, making it necessary for the plaintiff to address the door directly before the door and pass through the exit in a narrow space; in having a step flush with the trim, frame, and sill of said door on the hallway side of the door, which, due to the color and pattern of the tile floor, insufficient lighting of the hall, its closeness to the door, and shadow of the plaintiff, could not be seen by her in the exercise of ordinary care, and which by reason whereof the plaintiff did not see it; in maintaining an automatic door closer under such conditions; which closed the door with exceptional force against said plaintiff; in failing to have warning signs on the toilet room side of said door advising and warning this plaintiff and other patrons of the theatre of the proximity and presence of a step immediately on the hallway side of the door; and in maintaining

Leo J. Brumleve, Jr., Cincinnati, Hauer & Topmoeller, Cincinnati, for appellee.

Pogue, Hoffheimer & Pogue, Cincinnati, J. C. Culbertson, Cincinnati, and I. Jack Martin, Cincinnati, for appellant.

## OPINION

By MATTHEWS, J.

This is an appeal on questions of law from

a floor in the toilet room that sloped toward said door and step."

There was no evidence that the automatic door-closer had anything to do with the plaintiff's fall. Nor does the evidence show that the toilet rooom floor sloped toward the door or that if it did, that that circumstance contributed in any way to the accident.

The evidence does show that there were no warning signs posted in the toilet room and none in the corridor outside it. There is evidence from which the jury could infer that a balustrade intervened between a ceiling light and the corridor floor, thereby producing shadows on the floor at or near the toilet room door.

The evidence also shows that the floor of the corridor and toilet room was tile of the same color, with a sill of marble at the door of a slightly different hue.

The remaining evidence relates to the details of construction of the toilet room and corridor, the circumstances of the accident, the extent of the injuries, and the adequacy or inadequacy of the light.

The appellant urges that the judgment should be reversed for these reasons:

(1) That the court erred in overruling its motion for an instructed verdict, and for judgment notwithstanding the verdict, and that in addition to reversing the judgment on these grounds, the court should enter final judgment in its favor.

(2) That the verdict is manifestly against the weight of the evidence on each of the issues of negligence and contributory negligence.

(3) That the court erred in admitting opinion evidence as to whether the method or plan of construction was reasonable and proper and also evidence as to the structural conformity to a municipal ordinance passed after the accident.

(4) Error in refusing certain special charges.

(5) Error in the general charge.

We will consider them in the order given.

(1 and 2) These assignments of error raise the question of the sufficiency of the evidence to support the verdict. We have given them very careful consideration, because we regard the issue as a close one. It would be very easy to sustain a verdict for the defendant upon this evidence, but the jury resolved the issues of negligence and contributory negligence in the plaintiff's favor and unless we can affirmatively say that its finding is manifestly against the weight of the evidence, we must not

disturb it. We have concluded that we cannot so say. Our conclusion is that the trial court did not err in overruling the defendant's motions raising this issue. We are influenced largely in reaching this conclusion by the cases of Bennetts v Silver Bow Amusement Co., 211 Pac. (Mont.) 336; Central Amusement Co. v VanNostran, 152 NE (Ind. App.) 183; Pappleston v Pantages Minneapolis Theatre, 220 NW (Minn.) 418; Palmer v Deering, 97 N. Y. 7; and Painesville Theatre Co. v Lautermilch, 118 Oh St 167. Many other cases are cited and commented on by counsel, but we believe that they are distinguishable on the ground that the facts show that the defendant owed no duty or that the duty had been discharged, or that the trier of the facts found that the plaintiff had been negligent.

(3) The court permitted a witness to testify to his opinion as to whether the corridor and toilet room were constructed in a reasonable and proper manner, taking into consideration the factors set forth in the question which recited the details of construction alleged in the petition as negligent. The answers were to the effect that the construction was not reasonable and proper. It is claimed that this was error, because it permitted the witness to give his opinion on the ultimate issue to be decided by the jury. Ohio & Indiana Torpedo Co. v Fishburn, 61 Oh St 608, is cited in support of this claim, but in our opinion it is inapplicable. The first paragraph of the syllabus in that case is:

"Opinion evidence may not be given where an opinion is asked as to the precise, ultimate fact in issue which is to be tried by the jury, but such testimony is not necessarily incompetent if it calls for an opinion as to a matter which is evidentiary only and merely tends to establish a fact which may be involved in the issue."

The precise, ultimate fact in issue in this case was whether the defendant's negligence directly caused the plaintiff's injuries. If so, the plaintiff was entitled to recover unless barred by her own negligence directly contributing to such injuries. Now the witness was not permitted to give his opinion on whether the defendant was negligent. He was called upon to say whether in the respects specified, the construction was reasonable and proper, and his answer was that it was not reasonable and proper in construction, arrangement, or planning. This could all be, and still the jury might

648

very well find that the defendant had exercised reasonable care.

It is also claimed that this evidence should have been excluded, because the subject did not require expert knowledge. The correct way to plan and construct a theatre' building is not a subject of such common and general knowledge that all persons should be presumed to have sufficient information to decide without aid from those having special knowledge or skill, and when the issue relates to correct planning and construction, we are clear such evidence would be relevant and competent. Ohio & Indiana Torpedo Co. v Fishburn, supra. Whatever difficulty we have had in this connection has resulted from doubt as to the relevancy of the testimony to the issue in this case. That issue did include the question of whether the step or offset combined with the other surrounding circumstances created a danger or hazard, which a reasonably prudent person would not have maintained. After considering the matter, we have reached the conclusion that whether the manner of construction was reasonable and proper was a circumstance to be considered by the jury in reaching its ultimate conclusion on the issue of defendant's negligence, and that to assist it in reaching a proper conclusion it was entitled to the benefit of the opinion of those persons such as architects and builders having special familiarity with construction work.

The reference in this connection to an ordinance passed after the accident is not considered prejudicial.

(4) An examination of the first and second special charges presented by defendant and refused by the court discloses that each contained a positive direction to find for the defendant in the event the jury found the plaintiff was negligent in the respects set forth. The charges omitted the essential element of proximate cause, and for that reason the court did not commit error in refusing to instruct the jury as requested.

The refusal to give this special charge is assigned as error:

"The court says to you, as a matter of law, that the law presumes that the defendant was not in any manner negligent, and before it can be found by you that defendant was negligent in any manner, it must be proven against the defendant by the greater weight of the evidence, and the court says to you that you have no right to assume or presume that the defendant was negligent, simply because the accident happened."

The appellee does not dispute that this is a correct statement of law, but says that the same rule was contained in other special charges which were given and that, therefore, no error was committed by refusing to give this one. He refers to special charges one, two, three, and four in support of his position. That requires an examination of those charges. The first special charge that was given states the law of contributory negligence, the second defines the burden of proof and the preponderance of the evidence, the third instructs the jury that the defendant was not an insurer of the safety of the plaintiff, but was required only to exercise ordinary care which it defines, and the fourth states the duty of the jury in the event it finds the evidence in equipoise.

It is manifest that two of these special charges have no relation to presumptions of due care. The other two relate to the burden of proof of defendant's negligence, and the verdict to be returned in the event that the jury should find the evidence in equipoise or the greater weight in favor of the defendant. It follows that if the refused special charge contained a correct statement of the law, the court erred in refusing it, if the so-called presumption of due care is anything more than another way of saying that the burden of proving negligence rested upon the plaintiff. That brings us to the question of whether under the law of Ohio there is a presumption of due care. In **Ault v Hall, 119 Oh St 422,** at 428 and 429, the court said:

"One of the assignments of error in the instant case is that the court erred in imposing too great a burden upon the plaintiff in establishing her case in charging a special instruction requested by the defendant: 'The court says to you as a matter of law that the presumption is in favor of the defendant in this case, namely, that Dr. Hall, at the time complained of, was in the exercise of ordinary care in the premises.' Similar expressions are so often employed by the trial courts of this state that we would not reverse this judgment upon that ground alone, and yet it must be said that it was not an accurate statement of the proposition. It is more accurate to instruct the jury that no presumption of negligence is indulged from the mere fact of injury,

but that the burden of proof is on the plaintiff to show by the preponderance of the evidence that she was injured by the negligence of the defendant and that such negligence occasioned her damage."

In view of this pronouncement, we find that the court did not err in refusing this charge. See also: Watkins ▮ v Prudential Insurance Co., 95 A.L.R. 869, and annotation.

This brings us to those assignments relating to the general charge.

It is urged that the court did not state the issues, but an examination of the charge shows that the court stated clearly the issues of negligence, contributory negligence, and proximate cause, and the law applicable thereto, as well as the measure of damages in the event the jury found for the plaintiff.

Complaint is also made that the court erred in charging on the effect of a violation of §12600-35, GC. It is claimed that the section does not impose the duty of doing a definite act, but only requires the performance of the common law duty of reasonable care to adequately light the theatre, and, that, therefore, a charge that a violation of it was negligence is erroneous. Leopold v Williams, 54 Oh Ap 540, 8 O.O. 294, is cited in support of this position. The court in that case so holds, but an examination of the charge in the case at bar discloses that the court construed the statute and instructed the jury that "Under the statute the lighting must ▮ be such as ordinary prudence would demand considering the purpose for which the theatre and its facilities were used and having due regard for the safety of patrons," and this was followed by the statement that the violation of the statute "would constitute negligence as a matter of law." This seems to us to be no more than a statement that the failure to use ordinary care is negligence, and that the jury could not have misconstrued it. The explanatory matter found in this charge distinguishes it from the charge under consideration in Leopold v Williams, supra, and frees it from all misleading tendencies. We find no prejudicial error in this respect.

Finding no error, prejudicial to the appellant in the record, the judgment is affirmed.

HAMILTON, J, concurs.
ROSS, PJ, dissents in separate memorandum.

## DISSENTING OPINION

By ROSS, PJ.

I dissent from the majority conclusion for the reasons, that upon the fifth assignment of error one of the ultimate questions to be decided by the jury was whether or not the defendant in permitting the public to use the premises in question had used the care which reasonably prudent persons are accustomed to use under the same or similar circumstances. The expert was permitted to testify what, in his opinion, was and was not approved construction of similar premises. It is not suggested that the adoption and use of the premises by the defendant constituted a wilful design to injure the plaintiff, but simply that there was a failure to use proper thought for her safety—care. This is just what the expert said had not been done, and in doing so he was permitted to interpose his opinion upon the direct issue presented for the jury's consideration, and the court in permitting this evidence collided with the rule set out in Ohio & Indiana Torpedo Co. v Fishburn et, 61 Oh St 608. I quote from the record of the evidence of Edward H. Kruckemeyer, the "expert".

"Q. At what time did you visit the Orpheum Theatre?
A. It was in September, 1935.
Q. Do you remember the date?
A. I think it was the 16th.
Q. The 16th of September; and was your attention called to the corridor and ladies dressing rooom on the balcony floor?
Q And did you make an examination of it at that time?
A. Yes.
Q. Can you describe that corridor and the ladies rest room?"

Then follows a more or less minute description of the premises. (The jury was permitted to view the premises.)

The record later contains the following:

"Q. I want to ask you, taking all of these things into consideration, you have seen there the flooring and the toilet room, and the color of the tile, the kind of tile and color of tile on the corridor floor and on the dressing room floor, and the nearness of that door to the step, the direction in which that door closed, and the lighting arrangement, I will ask you whether or not in your opinion that is reasonable and proper construction?

Mr. Culbertson: I object to that.

The Court: Let him answer.

Mr. Culbertson: Exception.

A. No; I would not consider it good construction, planning arrangement, whatever you want to call it.

Q. Why? We are not experts. Will you explain your answer, why?

Mr. Culbertson: I object to this line of questioning.

The Court: Overruled.

Mr. Culbertson: Exception.

Q. You may answer?

A. It is poor construction, because the room does not give adequate space for the things it is supposed to do; I mean to say this, in the first place, it is very cramped. That vestibule is five feet wide by six feet, using the figures generally. I do not mean by inches.

Q. Is that the vestibule inside of the door?

A. Yes; I am not speaking of the stalls.

Q. The vestibule inside of the door?

A. Yes; it is five feet by six feet. A little of that space is taken up by the lavatory, which is 20x28 if I remember the figures correctly, leaving very little space for people that are to use it. This is a public building, and in a public building one must take into consideration the uses to which it is to be put. People crowd in rooms like that at a given time, and in our work we must take into consideration how it is to be used and plan accordingly. The door is three feet wide. It opens in, so, in leaving the room one must pull the door toward him and the lavatory being so close to the door, three inches away from the door, give you no chance to address that door properly. One must stand quite exactly in front of the dooor or else way over to the side in front of the lavatory or wash stand, which makes an awkward arrangement. Take into consideration that room being small, the lavatory being here, and the dooor next to it to the right, in pulling this door open one is in an awkward position in order to open that door. Furthermore, the door is rather heavy, it is an inch and three-qarters thick, and it has a door check on it. As you pull this door open, and just as soon as that door is released the door check acts, and it is apt to cause a surprise. I mean to say this, you are bumped in the back and forced to move over, then with an unexpected step such as there is at this doorway, immediately on the outside of this doorway * * *

"Mr. Culbertson: I object to that char-acterization of it, and I ask the jury be instructed not to consider that.

"The Court: Sustained. The jury is now instructed not to consider the term 'unexpected step.'

"Q. As soon as you come to the door, what effect does that give?

"A. One meets this step which is there, and it has a difference in elevation; the light in the room in the vestibule is back of the person going out of the door which tends, rather, does cast a shadow upon the floor of the toilet room, the step and the corridor floor, making it rather hard for one to see there is a step there; also that the tile in the lavatory in the room and the tile in the corridor are of the same color and pattern, the sill is of the same general tone, I mean, sufficiently the same that one would not notice. It is not a marked difference.

"Mr. Culbertson: I object to him saying what someone else would know or do. I think it is for the jury to consider.

"The Court. I think he may answer this.

"Q. Go ahead and finish your answer, please.

"A. The room is so cramped, so tight, as we would call it, it would permit of only four people being in the vestibule part at one time, and that is with due allowance for the space the door requires in opening, and the lavatory being so close to that door, so that you can not address it properly, so that you have not the ease and calm with which you should have to get by it. You are more concerned with getting at the door and not having this butt you in the back. I feel it is not good construction.

"Q. Having a step right at the door where the door opens up, without having a tread or platform beyond the door, whether or not that is proper and reasonable construction?

"A. No; it is not."

And again:

"Q. What difference does it make then if there is a door at the place where the step off is when the light is behind you?

"A. What difference does it make when there is a door?

"Q. Yes?

"A. Obviously you can not see the step until the door is open.

"Q. What opportunity has a patron who is in the toilet room of seeing the step before the door is open to ascertain whether or not there is a step there just at the door?

"A. Hardly any one would realize there is a step there unless they saw it.

"Mr. Culbertson: I object to that.

"The Court: That may go out.

"Q. What effect would that have upon your opinion as to proper planning to have a step at the door when you did not see the step until you pulled the door open?

"A. It is not proper planning; in fact, it is not even permitted.

"Q. To have a step * * *?

"A. (Interrupting) You are not allowed to have any one single step in a public building and you are not allowed to have it in an unexpected—pardon me for not using that word, but to have it in a doorway leading from a room, is not permitted in the Code."

If such expressions of opinion do not constitute an invasion of the jury's function, it, in my opinion, would be difficult to find examples of such action. Unquestionably, the evidence of this expert had great, if not controlling, weight in influencing the conclusions of the jury and was extremely prejudicial to the case of the defendant. The action of the court in permitting such evidence was sufficient alone to justify a reversal.

But the judgment should be reversed for the refusal of the court to grant the request for certain special charges, which is the sixth assignment of error. The third charge is as follows:

"The court says to you, as a matter of law, that the law presumes that the defendant was not in any manner negligent; and, before it can be found by you that defendant was negligent in any manner, it must be proven against the defendant by the greater weight of the evidence, and the court says to you that you have no right to assume or presume that the defendant was negligent, simply because the accident happened."

The failure of the court to give this special charge is justified upon the theory apparently that its substance was contained in other charges given. No such charge is called to our attention. Under the rule in **Washington Fidelity Nat'l Ins. Co. v Herbert, 125 Oh St 591,** a party is entitled to have a special instruction if it states a correct rule of law and is applicable to the facts. This charge dealt with presumpitons. It was carefully worded. It states a rule of law clearly and in understandable language. It is not argumenta-

tive. It is complete in itself. It is directly applicable to the facts. It is directed to removing a common misconception on the part of the jury—that because some one has been injured, the defendant must be responsible for the injury. Or the suit would not have been filed. The defendant was entitled to the instruction and the refusal to give it constituted error prejudicial to the defendant.

It is stated that the charge presents issues to which other special instructions requested by the defendant and given to the court were directed. An examination of other instructions discloses that in none of these was the direct issue covered by the refused charge specifically reached.

In the majority opinion it is stated this is a "close case" upon the weight of the evidence. Upon the question of insufficient lighting, the case would have to be submitted to the jury on the issue of negligence. I am not convinced that such is the case upon the issue of contributory negligence. It is to me inconceivable that the plaintiff alone should have suffered injury without contributory fault on her part in the use of facilities constantly employed by hundreds of other people. It is also difficult for me to see the justice of a recovery based upon the presence of a claimed defect in construction, which she had but a moment before been made aware of when she entered over the step. She stepped up when she went in. She stumbled when she went out and the defendant is mulcted in the sum of $12,000.

I am compelled to conclude that such evidence would preclude plaintiff's recovery, or, at least, justify a reversal on this branch of the case upon the weight of the evidence.