## Waldron v. Metropolitan Life Insurance Company, Appellant.

258

[black redaction bars]

Argued March 25, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

reargument refused May 26, 1943.

*D. C. Jennings,* for appellant.

*Edward O. Spotts, Jr.,* with him *Wm. T. Corbett* and *John W. Cost,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, April 19, 1943:

This is an appeal from the judgment of the court below for $3705, entered upon a verdict in favor of a beneficiary in an action of assumpsit on a policy in the sum of $3000 insuring against the results of bodily injuries caused by violent and accidental means.

On the morning of November 17, 1938, the dead body of the insured, Thomas N. Waldron, was found in the ravine below the Church Street Bridge in Pittsburgh. His cap was nearby and part of his spectacles, with one lens missing, was found beside him. The bridge was 93 feet high and the body was lying 24½ feet out from a plumb line on the north side of the bridge. There were several fractures of the hip, leg and ribs and death was

due to shock from these injuries. Before 7:15 P.M., November 16, 1938, the deceased was apparently in good health and spirits.

There was medical testimony by the coroner's physician, called by the defendant, that the superficial lacerations found on the body could have been caused by the body falling through trees and that the serious injuries "could have been" caused by a fall from the bridge. Medical testimony fixed the time of Waldron's death at about 10:15 P.M. Physicians called by the plaintiff, testified that Waldron's injuries "could have been" caused by his being struck by a motor vehicle. Officers who investigated this case testified to finding the marks of a hand and foot on the guard rail of the bridge; that there were broken branches in the trees below; and a mark on the ground about 20 feet at the slope of the ravine from the place where the body was found and indications that the body had rolled from that point. A witness saw and conversed with Waldron on the bridge at 8:15 P.M., and another witness saw Waldron after 8 P.M. Waldron was then "looking with his head in his hands and with his elbows on the railing and he was looking down". The witness testified further: "As I got within a few feet of him he turned quickly and stared directly at me and . . . his eyes seemed to be staring and bright . . . I wondered if something was wrong with him . . . I decided nothing was wrong and just went on".

The plaintiff beneficiary, deceased's father, contended that the death of the insured was caused by accidental means; the defendant contended that it was a case of suicide. The jury found in favor of the plaintiff and the court below refused to enter judgment for the defendant N. O. V. This appeal followed.

What a plaintiff must do in cases of this kind in order to warrant a recovery is settled. In *Watkins v. Prudential Ins. Co.*, 315 Pa. 497, 173 A. 644, where plaintiff's case depended upon proof of death from accidental

means, we said: "On plaintiff rests the burden of proving all the operative facts by a fair preponderance of the evidence. An even balancing of the evidence on the issue of death by accidental means or death by suicide denotes that plaintiff fails to sustain her burden of proof and the verdict should be for the defendant. Causes of action are always set forth affirmatively and if they are to prevail they must be supported either (1) by facts tending to prove directly the cause of action pleaded or (2) by legitimate inferences from circumstances which have met the tests of admissibility. Mere guesses and conjectures cannot be substituted for legal proof." In *De Reeder et al. v. Travelers Ins. Co.*, 329 Pa. 328, 333, 198 A. 45, which was a suit on an "accidental death" policy we said: "Plaintiff's case fell because of failure of proof. There were no facts or circumstances from which the jury could infer legitimately *to the exclusion of other inferences equally plausible* that the insured's death resulted from an accident. The burden of proof resting upon plaintiffs in civil actions cannot be met by conjectures. The phrase 'burden of proof' means exactly what it says. . . . In a civil case the evidence of facts and circumstances on which plaintiff relies and the inferences logically deducible therefrom, must so preponderate in favor of the basic proposition he is seeking to establish as to exclude any equally well supported belief in any inconsistent proposition." See also *Whigham v. Metropolitan Life Ins. Co.*, 343 Pa. 149, 22 A2d. 704.

Tested by these established standards, plaintiff failed to make out a case for a jury. Any fact proved in this case was as consistent with the theory of suicide as it was with the claim of accidental death. If the deceased had jumped from the bridge it would not be impossible or even improbable that his body in falling would describe an arc and land 26 or 27 feet out from a plumb line dropped from the side of the bridge. Anyone reading this record with an open mind will be left completely in doubt as to the cause of insured's fall from the bridge.

If there is any slight preponderance of the evidence either way, it is in favor of the theory of suicide. The deceased's loitering on the bridge in a manner to excite the suspicion of at least one witness and the "fresh" hand marks and foot marks on the bridge (though there was no proof that these marks had been made by the deceased) would tend somewhat to support the claim that the deceased deliberately threw himself off the bridge. He left his home ostensibly "to collect a bill at the Adams' ". His brother testified that he did *not* have to cross the bridge to go to the Adams'. His allegedly cheerful spirits up to the time he was seen upon the bridge does not necessarily outweigh the evidence of suicide. It is a matter almost of common knowledge that many who commit suicide do not give any indication beforehand of their self-destructive intent. In many cases suicide results from a sudden impulse. What motivates persons to commit suicide is often a mystery.

The best evidence plaintiff offers in support of the averment of accidental death is the finding, on the path of the bridge, by the deceased's brother, of small pieces of glass "the same color as the glasses" the deceased wore. The largest piece was "about one-eighth inch square." The witness also found on the bridge a white button similar to the other white buttons worn on deceased's shirt from which a button was missing. Even if we accept the inference that the shirt button and piece of glass found on the bridge were the deceased's, it is not sufficient to support a further inference that the deceased was thrown off the bridge by an automobile or by some feloniously inclined persons.

If the deceased had been violently struck by an automobile or had been murderously assaulted, it is probable that there would have been more evidence to that effect than merely a broken lens and a detached shirt button. Glasses are broken and buttons come off shirts without the intervention of extraneous violence.

It was also shown in behalf of plaintiff that on February 27, 1939, the deceased's brother, Herbert, received the following letter (made up of words cut from a magazine and pasted on cardboard) : "We gave sudden death to your brother. Save trouble before you get same. This business don't need you". This evidence was of only negligible, if any, value. It may have been a hoax or it may have been sent by someone who wished to give support to the claim of death from accidental means. All the evidence offered in behalf of plaintiff falls far short of making out a case of such preponderating proof as the law requires. What we quoted with approval in *Henderson v. National Drug Co.,* 343 Pa. 601, 607, 23 A.2d 743, is applicable to this case: "The courts have always insisted that the life, liberty and property of a citizen should not be taken away on possibilities, conjectures, or even, generally speaking, a bare probability. . . . . When an inference of the probability of the ultimate fact must be drawn from fact whose existence is itself based only on an inference or a chain of inferences . . . all prior links in the chain of inferences must be shown with the same certainty as is required in criminal cases in order to support a final inference of the probability of the ultimate fact in issue. . . . . The prior inferences must be established to the exclusion of any other reasonable theory rather than merely by a probability."

There was in this case no burden upon the defendant to prove that the deceased committed suicide; the burden was upon the plaintiff to prove that the insured's death resulted from accidental means. A careful reading of this record convinces us that plaintiff's case was so conjectural in character that it was not legally submittable to a jury.

The judgment of the court below is reversed and is here entered for the defendant.