## De Vecca v. Ashton et al.

*Speicher & Austin*, for plaintiff.

*Matten & Matten*, for defendant Ashton.

*Body, Muth, Rhoda & Stoudt*, for defendant White Horse Market Place.

MAYS, P. J., July 29, 1953.—This is an action of trespass, instituted by plaintiff for damages arising from the death of plaintiff's husband, Fred E. De Vecca, Jr., who came to his death being involved in an automobile accident on November 5, 1949, at 3 a.m. On this date, Fred E. De Vecca, Jr., and Leroy Ashton

were in a Hudson sedan automobile traveling south on the highway leading from Reading to Lancaster, being known as Pennsylvania Route 222. At a point five miles south of Reading, this Hudson automobile collided with a tractor-trailer owned by a partnership doing business as White Horse Market Place, which was also made a defendant. This tractor-trailer at the time it was struck by the Hudson sedan automobile was partly on the traveled portion of the highway and partly off the traveled portion of the highway. As a result of the collision, Ashton was killed immediately and De Vecca lived for about 12 hours. After the collision, Ashton's body was found in the middle of the highway not far from the tractor-trailer. The Hudson sedan automobile traveled some distance after the collision and came to rest on the left hand side of and off the traveled portion of the highway. De Vecca, after the collision, was still in the automobile, lying on the floor board between the left front seat of the automobile and the steering wheel post, with his head extending out the left door. The entire right side of the automobile was torn off. The left side of the automobile remained intact with the left door swung open. The Hudson sedan automobile was owned by Ashton and he and De Vecca were licensed operators. De Vecca was accustomed to driving automobiles and had been employed by a firm as a truck driver. On the rear of the trailer, there was a solid piece of iron affixed to the trailer, extending across the entire width of the trailer. The top of Ashton's head had been severed or torn off. The jury returned a verdict for both defendants.

Plaintiff filed various reasons for new trial. All of them need not be discussed. We will concern ourselves with the questions involved as stated by the plaintiff.

1. Where the facts of a case reveal the occurrence of an accident in which both occupants of a vehicle are

killed, is plaintiff entitled to a charge by the court that there is a rebuttable presumption that the vehicle is operated by its owner, if he be present?

2. Where a plaintiff seeks to establish that a defendant operated a motor vehicle, should he be permitted to attempt to establish this by means of negative fingerprint evidence?

3. Is an instruction to the jury that in the event they find plaintiff to be the driver of the car that they shall find in favor of both defendants such an error as to entitle plaintiff to a new trial?

Here there was no complete lack of evidence as to who was driving the car at the time of the accident. While there was no eye witness testimony as to who was driving immediately prior to the accident, there was other evidence. In the first place, there was one witness who came upon the scene of the accident within moments after it happened. He testified that the body of Ashton, the owner of the car, was lying on the highway to the left of the truck with the top of his head cut off. The other occupant of the car, Fred De Vecca, was found in the car on the floor with his head to the left of the car under the steering wheel and his feet to the right side of the car. His body was on the floor board between the seat and steering wheel between the seat and pedals and the bottom of the steering post. As the witness watched, some reaction caused the body to move, and the body straightened out which put his feet out the right side of the car and his head out of the door on the left side.

Plaintiff contends that the court erred in its charge concerning the presumption that the owner of a vehicle was presumed to be the driver. The trial judge concerning this phase of the case said:

"I will say to you, members of the jury, that if you take the testimony which is uncontroverted, that Ashton was the owner of the Hudson car, that he had

an operator's license and that he was in the car at the time, what do you infer, members of the jury, from such testimony? What is a fair inference to make? . . . You can take that testimony,—the owner being in the car, had a driver's license at the time of the occurrence of this accident. What inference do you make from those things? Do you infer and do you because of that inference from that testimony and the facts in the case come to a conclusion that Ashton was actually operating the car? If you do that then in that respect plaintiff's theory would be partially proven and established."

Plaintiff insists that the trial judge should have been more emphatic and stated definitely that this was a presumption that the vehicle was operated by Ashton. The charge in this case was probably more favorable than that to which plaintiff was entitled, in view of the fact that the evidence in this case was not confined to ownership.

In the cases relied upon by plaintiff, there was little, if any, evidence as to who was driving the car at the time of the accident. The only evidence in those cases was that the owner was present in the car and the courts invariably stated that where there was no evidence a rebuttable presumption could arise that the owner was driving at the time of the accident. However, the effect of such a presumption or inference is merely to permit the case to go to the jury in the absence of any countervailing evidence. If defendant produces evidence to the contrary which may have some bearing on who was driving the vehicle, then it is for the jury to weigh that evidence and determine whether the inference has been rebutted. In such a case, if the trial judge points out, as was done here, that from certain facts they may infer that the owner was driving the car, he should, as was done, permit

the jury to find whether or not the inference has been overcome. Whether we call it a presumption or an inference, in all events on the plaintiff rests the burden of proving all of the operative facts by a fair preponderance of the evidence.

"Causes of action are always set forth affirmatively and if they are to prevail they must be supported either (1) by facts tending to prove directly the cause of action pleaded or (2) by legitimate inferences from circumstances which have met the tests of admissibility. Mere guesses and conjectures cannot be substituted for legal proof.

"In the deliberations of the jury there are permissible inferences (sometimes miscalled 'presumptions') rooted in general human experience and which have weight when the evidence, respectively, for and against a fact in issue leaves the jury in a 'twilight zone' of doubt as to that fact. Such 'presumptions may be looked upon as legally recognized phantoms of logic, flitting in the twilight, but disappearing in the sunshine of actual facts'."

Justice Maxey so stated in Watkins v. Prudential Insurance Company, 315 Pa. 497, 512.

At the trial, McQuaid of the Pennsylvania State Police, was called to testify as to a fingerprint he took from the steering wheel of the automobile. It appeared from his testimony that this fingerprint was taken on November 8, 1949, or three days after the accident on November 5, 1949, at a garage some distance from the scene of the accident. There was no testimony as to how long the automobile had been at the scene of the accident, nor where it had been from the time of the accident to November 8, 1949. Likewise, there was no testimony to show that during the interval the steering wheel had not been touched by other people, nor was there any testimony that he had taken all the finger-

prints from the wheel. At the request of the court for plaintiff's counsel to make an offer of proof, the plaintiff's counsel stated:

"I offer to prove by the witness on the stand that the photographs which represent the impression taken from the wheel by Officer McQuaid were given to Officer Richards of the Reading Police, and that Officer Richards and Officer Feltman, fingerprint men of the Reading Police Force compared the print, the photographs of the print, received from Officer McQuaid, with a full set of fingerprints taken of Fred E. De Vecca, Jr., after his death, and that this comparison revealed the print found on the wheel to be that of some other person."

Objection was made to this offer.

"Mr. Matten: Objected to, first, because the witnesses have not been qualified . . .

"The Court: I am assuming they will be.

"Mr. Matten: And because there is no proof that the condition of the wheel on the date when the fingerprints were taken by Officer McQuaid were the same as they were at the time of the accident; second, the proof is purely negative and does not go to prove that Ashton was the driver of the automobile.

"Mr. Stoudt: That is substantially my objection, too."

It is submitted that the ruling of the court in sustaining the objections was correct. The testimony would not have proved that the fingerprint taken from the wheel by McQuaid was that of Ashton. The wheel may have been touched by any number of people before the print was taken and there may have been many other prints which were not taken by McQuaid. To permit testimony of this type would not have in any way been helpful to the jury, but rather would have permitted the jury to engage in pure speculation and conjecture.

In the case of Willoughby v. State of Mississippi, referred to in plaintiff's brief, the Mississippi court followed the ruling of this court in the case at bar. There, too, there was no evidence that others could not have handled the bottle from which the impression was taken, or that all fingerprints susceptible and capable of being developed thereon had been brought into court, and the court refused to admit fingerprint testimony in evidence to the effect that the fingerprint taken from the bottle was not that of defendant.

In the instant case, what plaintiff proposed to prove did not constitute even a scintilla of evidence that Ashton was the driver of the automobile and the objection to plaintiff's offer was properly sustained by the court.

The trial judge's charge must be considered in the light of the contention of plaintiff's case. The pleadings were drawn and plaintiff argued to the jury on the theory that whoever was driving the Hudson car was clearly without a doubt, negligent. Plaintiff contended that the car was being driven at an excessive rate of speed, that it was not under such control so as to be able to be stopped within a range of his headlights, that the driver failed to observe the truck partially on the highway. In the light of the contention of plaintiff that whoever was driving was doing so in a negligent fashion, the trial judge had no alternative but to charge as he did. Clearly, if the jury found that the operator of the Hudson car was De Vecca and the plaintiff conceded that there was negligence on the part of the driver, then clearly the contributory negligence of De Vecca would prevent a recovery either from Ashton or from the White Horse Market Place. Certainly, if De Vecca was driving, he had no possible claim against Ashton and if he was driving he was contributorily negligent, and would have no claim against the White Horse Market Place.

And now, to wit, July 29, 1953, rule for new trial is discharged.