## O'Donnell, Appellant, v. John Hancock Mutual Life Insurance Company.

Argued March 18, 1959. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN and WATKINS, JJ.

*Harry Norman Ball,* for appellant.

*Jan E. DuBois,* with him *White & Williams,* for appellee.

OPINION BY HIRT, J., April 16, 1959:

The defendant insured the life of John J. O'Donnell in two policies in the aggregate amount of $1,500. He died on August 3, 1951, at age 58. This action was brought by his widow, as beneficiary, to recover additional benefits equal to the face amount of the policies, on her allegation that the death of the insured was "caused directly, independently and exclusively of all other causes by drowning." Liability under each of the policies for additional benefits was restricted to proof "that the death of the insured was caused directly, independently and exclusively of all other causes, by a bodily injury sustained solely by external, violent and accidental means." The lower court at the close of the plaintiff's case entered a compulsory nonsuit, and this appeal is from the refusal of the court to take it off.

At the trial plaintiff testified that her husband had worked as a machinist for Philco Corporation for 25 years; that he was in good health and had never lost time from illness. Plaintiff last saw him alive on the evening of his death as he went upstairs about 9:30 intending to take a bath and then retire. Plaintiff left the house about that time to make delivery of cosmetic materials which she had sold to one of her patrons. When she returned at midnight her husband was not in his bed and the bathroom door was locked. With the help of a roomer the latch on the door was

broken. She testified: "Well, when I opened the door I saw the body [of the insured] in the tub. The face was down in the water and the feet was sort of up in the back. The water was just over the body." and further, that decedent's head was "immersed in the water down near the spigot." He was dead when she saw him there. There was a slight cut on his nose. The entire record is barren of proof of death from accident, much less of death from accident "independently and exclusively of all other causes."

Dr. John B. McNally was the only witness called by the plaintiff and his testimony contributed nothing. He had seen plaintiff's husband in August 1951 and only on that one occasion. Although he then found no evidence of a "heart condition", he prescribed a mild sedative but he did not restrict O'Donnell's activities in any way. The following hypothetical question was put to him: "Now Doctor, assuming that Mr. O'Donnell was found dead in his bathtub with his face immersed in the water, and assume that an autopsy showed that he drowned, and assume further that there was no evidence of blood clot or thrombosis, although there was evidence of old infarction healed and some arteriosclerosis, can you give us an opinion as to whether or not the healed infarction and the moderate arteriosclerosis contributed to his death?" The question clearly was improper because it assumed facts of which there was no testimony. There was nothing in the evidence as to whether there was an autopsy or, if there was, what the examination of the body disclosed. The lower court therefore properly sustained the defendant's objection to the question because it assumed "matters not in evidence." And when plaintiff then rested, the court nonsuited the case on the defendant's motion. On this state of the record the court had no other alternative.

The fact that the body of the insured was found dead in a bathtub with his head immersed in water, in itself was not proof of drowning exclusively from accident. In *Mulholland v. Fidelity & Casualty Co.*, 161 Pa. Superior Ct. 425, 55 A. 2d 561 we approved the entry of judgment for the defendant on the whole record, for the reason that there was no evidence that the cause of death was within the terms of the policy. And we there held (quoting from *DeReeder v. Travelers Ins. Co.*, 329 Pa. 328, 198 A. 45) it was for the plaintiff "upon whom rested the burden of proof . . . to present 'facts or circumstances from which the jury could infer legitimately, *to the exclusion of other inferences equally plausible* that the insured's death resulted from accident.'" In *Zagowsky v. John Hancock M. Life Ins. Co.*, 172 Pa. Superior Ct. 319, 93 A. 2d 898, a case which has much in common with the present action, we said: "There can be no relaxing of the rule which places the burden on the . . . plaintiffs to prove that the death of the insured resulted from an external violent and accidental cause. In cases such as this, a fall, and nothing more, is not enough to support a claim for accidental death. Where a fall, though from accident, is established, there must be in addition either expert medical testimony or circumstantial evidence, or both, which establish a causal connection between the fall and the death."

Our holding in the *Zagowsky* case was that expert medical testimony was essential to bringing the action within the additional indemnity provision of the policy and for lack of such testimony we denied recovery. In the instant case claimant testified that her husband, the insured, had complained of dizziness when he bent over. And since there was no direct proof of drowning the present record suggests that an attack of dizziness or vertigo may have caused the insured to fall into the

tub. In any view an inference that dizziness was a symptom of a disease or infirmity which caused, or contributed to, the death was at least as justifiable as an inference of drowning. At best, therefore, the proofs were in equal balance as to whether death resulted from accident exclusively of all other causes, and the entry of a nonsuit was inevitable because of the failure of the plaintiff to meet her burden of bringing the action within the additional indemnity provision of the policy.

Order affirmed.