**Deka Ann M. SMITH, Plaintiff,**

v.

**JOHN HANCOCK MUTUAL LIFE IN-SURANCE COMPANY, Defendant.**

**Civ. A. No. 64–1338.**

United States District Court
W. D. Pennsylvania.
May 24, 1966.

James C. Evans, Evans, Ivory & Evans, Pittsburgh, Pa., for plaintiff.

Samuel P. Gerace, White, Jones & Gregg, Pittsburgh, Pa., for defendant.

## OPINION

WEBER, District Judge.

This is a suit under the accidental death benefit clause of a life insurance policy. The insuring agreement provided for payment to the beneficiary for death "as a result of bodily injury sustained solely through external, violent and accidental means, directly and independently of all other causes * * * ". The defendant insurance company alleges that plaintiff's proof fails to meas-ure up to the terms of the insuring contract.

On April 17, 1964, at about 6:30 p. m., Stewart Smith, the insured, was found dead in his automobile at a point alongside Pa. Route 22, about five miles east of Cresson, Pennsylvania. He was then forty-nine years of age, and in previous good health. He resided in Altoona, Pennsylvania, some twenty miles away. At this point Route 22 is a straight two-lane highway, having narrowed from a three-lane highway 320 feet west in the direction from which Smith was proceeding. The pavement at this point is twenty-four feet in width, and at this location the highway passes under a railroad underpass in the form of an arched stone tunnel. On the sides of this underpass the stone walls supporting the railroad bed extend out like wings at about a 45° angle from the highway. Smith's automobile had struck this stone-abutment beside the underpass at a point 15' 10" perpendicular from the right-hand edge of the pavement. Tire tracks leading back from Smith's vehicle to the highway indicated that the vehicle left the right-hand side of the paved highway at a point 90 feet from the point of impact against the wall and proceeded in a straight path to the wall. The marks of the tire treads were clear in the tracks indicating that all four tires were inflated and that no braking sufficient to cause skidding had occurred. The extensive damage to the front of the vehicle produced the opinion of a trained State Police traffic officer that the speed of the vehicle at the time of impact was in excess of fifty miles per hour. Plaintiff proved the above circumstances of the death, the insurance coverage, and produced a death certificate from the Pennsylvania Department of Vital Statistics, containing a report, certified by the Coroner, that the immediate cause of death was "traumatic shock, crush injuries of left chest, possible fractured skull", and under the heading "Other significant conditions", the statement "accident", and "lost control of car and struck culvert." This

certificate is admissible as evidence of the facts therein related (28 U.S.C.A. § 1732), but the Coroner's opinion is not binding on the trier of fact. Thomas v. Conemaugh & Black Lick R. R. Co., 234 F.2d 429 (3rd Cir., 1956).

"A death certificate may have a prima facie evidentiary value as to the cause of death, particularly where a statute expressly so provides, but it is not conclusive. * * * but under some statutes it is prima facie proof." 46 C.J.S. Insurance § 1357d, p. 538.

This is a diversity case and the law of Pennsylvania applies.

"In passing, we apprehend it to be the duty of a federal court, when called upon to ascertain and apply local law, to look to the status, generally, of the pertinent local law rather than to an isolated case, marked by the peculiarity of its own particular facts." Lennig v. New York Life Ins. Co., 122 F.2d 871, 874 (3rd Cir., 1941).

■ The well-established rule in Pennsylvania holds that where death is shown to be from both external and violent means there is no presumption that the death was caused by accidental means, and the plaintiff must set forth facts showing that the death was by accidental means. Watkins v. Prudential Insurance Co., 315 Pa. 497, 173 A. 644, 95 A.L.R. 869 (1934); Waldron v. Metropolitan Life Ins. Co., 347 Pa. 257, 31 A.2d 902 (1943). Nevertheless, the accidental nature of the death may be inferred from the surrounding circumstances, if the inference is warranted. While no presumption is created having the force of evidence from the proof of violent and external causes which shifts the burden of proof to the defendant, there still remains an inference to be drawn from the natural instinct of self-preservation that the death was accidental.

"In cases of this nature, where plaintiff's circumstantial evidence of accidental death is not strong and as a whole comes close to the borderline, the testimony, nevertheless, is prima facie sufficient, presenting a case which must be submitted to the jury." Heffron v. Prudential Insurance Co. of America, 144 Pa.Super. 307, at p. 311, 19 A.2d 556, at p. 559 (1941).

■ Where it has been established that the cause of death is both violent and external, and that the deceased has no apparent reason to take his own life, the inference of accidental means of death makes out a prima facie case for the plaintiff. Wainstein v. Equitable Life Assurance Society, 318 Pa. 428, 178 A. 502 (1935). Walters v. Western & Southern Insurance Co., 318 Pa. 382, 178 A. 499 (1935).

Having made a prima facie case in this manner, the plaintiff has cast upon the defendant the duty of producing some evidence to meet it.

"It is not necessary that this prima facie case be met by a preponderance of the evidence or by evidence of greater weight. It is sufficient if defendant's evidence equalizes the weight of plaintiff's evidence, or, in other words, puts the case in equipoise. The burden of maintaining the affirmative of the issue involved in the action is upon the party alleging the fact which constitutes the issue and remains upon him throughout the trial." 20 Am.Jur. Evidence § 1251, p. 1102.

"The burden of proving suicide as a defense to the policy ordinarily is on the insurer; but on the issue of double indemnity for accidental death it has been held that the burden is on the plaintiff to prove, as between suicide and accident, that death resulted from accident."

* * * * * *

" * * * nevertheless, on the issue of additional benefits for accidental death, plaintiff is held to have the ultimate burden of establishing that the death resulted from accident rather than from suicide." 46 C.J.S. Insurance § 1319(4) (b), pp. 441, 442.

See Marlowe v. Travelers Ins. Co., 320 Pa. 385, 181 A. 592 (1935); Heffron v. Prudential Insurance Co. (cit. supra);

Walters v. Western & Southern Ins. Co. (cit. supra)

There is no burden on the defendant in this case to prove death by suicide. Such a burden is placed upon the insurer under those policies which insure against death, but which contain a proviso avoiding the policy if the insured dies by his own act. When, in a suit under such a policy,

> "plaintiff makes out a prima facie case, and defendant seeks to avail itself of the substantive defense reserved in the policy that the loss was due to a cause or risk *specifically excepted in the policy* (emphasis in original), the defense becomes an affirmative one and has the burden of proof. See Bowers v. Great Eastern Casualty Co., 260 Pa. 147, 103 A. 536; Carnes v. Iowa Travelling Men's Ass'n., 106 Iowa 281, 76 N.W. 683; and Home Benefit Ass'n. v. Sargent, 142 U.S. 691, 12 S.Ct. 332, 35 L.Ed. 1160." Watkins v. Prudential Ins. Co. of America, 315 Pa. 497, at p. 508, 173 A. 644, at p. 650.

> "* * * it was for the plaintiff upon whom rested the burden of proof * * * to present 'facts or circumstances from which the jury could infer legitimately *to the exclusion of other inferences equally plausible* that the insured's death resulted from accident.'" O'Donnell v. John Hancock Mutual Life Ins. Co., 189 Pa.Super. 377 at p. 380, 150 A.2d 146 at p. 148 (1959), quoting from DeReeder v. Travelers Ins. Co., 329 Pa. 328, 198 A. 45 (1948);

"There can be no relaxing of the rule which places the burden on the * * * plaintiffs to prove that the death of the insured resulted from an external violent and accidental cause" when the policy stipulates such event as a loss covered. See Zagowsky v. John Hancock Mutual Life Ins. Co., 172 Pa.Super. 319, 93 A. 2d 898 (1953).

While we have stated that proof of death by violent and external means carries with it the inference that such death was accidental, and while we may also consider the effect of the Coroner's certificate, and from these conclude that plaintiff has established a prima facie case of accidental death, before proceeding with the effect of plaintiff's presentation of its case, it is necessary to examine the physical circumstances surrounding the death to determine what other inferences may logically be drawn from these. In addition to the inference arising from the instinct of preserving one's person from harm, we believe it is also logical to infer that a person intent upon self-destruction would not seek a means which is not reasonably sure of producing that end, but it is also reasonably likely to produce severe, painful, prolonged and possibly permanently crippling injuries. Severe collisions between vehicles and fixed objects are common enough and the survival of persons occupying such vehicles with severe crippling injuries is frequent enough in common experience to allow us to draw the inference that the decedent's actions were not dictated by an intention to destroy himself. Nevertheless, the physical fact of the collision established that there was no defect in the highway at this point to cause the vehicle to go out of control, that the tracks of the vehicle proceeded for ninety feet in a straight line from the highway to the stone wall, and that the track of the tire treads was clear showing that the tires were all inflated and that there was no braking sufficient to cause skidding. The highway was straight for some distance before reaching the underpass and there was a space of seven feet between the outer edges of the highway and the wall of the tunnel on each side. The decedent had travelled this road before and knew of the existence of the tunnel. All these facts point to a deliberate and intentional act on the part of the decedent driver. "Regardless of the view taken of the procedural effect of the presumption of death by accidental means, courts have not failed to be impressed by undisputed evidence of physical facts negativing accident." Hinds v. John Hancock Mutual Life Ins. Co., 155 Me. 349, 155 A.2d 721,

at p. 732, 85 A.L.R.2d 703, at p. 717 (1959).

To counter or overcome the effect of plaintiff's evidence or the inferences arising therefrom, the defendant produced a large body of evidence as to the decedent's activities and state of mind before his death, all tending to show motive or motives for suicide.

"(Motive) is a circumstance of major importance to be considered in determining whether or not death was the result of suicide, and, where the evidence between accident and suicide is evenly balanced, motive or lack of motive is decisive." 46 C.J.S. Insurance § 1358, at p. 559.

In discussing the effect of evidence of motive in a similar case involving death in an automobile collision the United States Court of Appeals for the Sixth Circuit held that the effect of introduction of evidence of a violent and external cause of death by automobile collision was that the plaintiff must recover in the absence of evidence to the contrary by reason of the so-called presumption against suicide. However, it stated:

"This presumption, as such, would not survive the introduction of evidence tending to prove suicide or even motive for suicide. Thereafter it would have no place in the reasoning as a presumption * * * but, as a legitimate inference from human life, the effect would continue." New York Life Ins. Co. v. Ross, 30 F.2d 80, at p. 82 (6th Cir., 1928).

"A motive for suicide is helpful to the defense but [it] is not essential. Ætna Life Ins. Co. v. Tooley, supra, [C.C.A.5, 16 F.2d 243]; Burkett v. New York Life Ins. Co. (C.C.A.[5]) 56 F.(2d) 105. This is so because in this life men who have no apparent motive for it do commit suicide." New York Life Ins. Co. v. Trimble, 69 F.2d 849, at p. 851 (5th Cir., 1934).

"In the absence of direct evidence of eye witnesses, suicide notes, or previous declarations, the physical surroundings must be subordinated to evidence as to motive." 46 C.J.S. Insurance § 1358 at p. 559.

We will not attempt to recite in detail all of the elements of defendant's evidence, but will only summarize them in order to establish our findings from this evidence. Perhaps the nature of the extensive evidence may be suggested by the attempt of the defendant to prove by an extended review of decedent's account books that he had embezzled funds from his employer and also from defendant's production of a full case to prove that decedent was guilty of a robbery and murder on the day before his death. It is immaterial to our present purpose whether or not defendant has succeeded in proving all of these charges beyond a reasonable doubt. It is sufficient to say that defendant produced a well-supported case in proof of the allegations. The findings which the Court makes from all of defendant's evidence were that decedent did not produce business equal to the average insurance agent in his office; that he had a prior difficulty with a shortage in his accounts and was threatened with discharge if it occurred again; that decedent was discouraged with his business career; that on the day before his death an audit revealed a shortage in his accounts leading to his resignation from the company; that he immediately paid the shortage at the end of the audit on the night before his death from an unexpected supply of cash in his possession; that he gave an untrue explanation of the source of the funds to his superior; that he had inquired that day about the prospects of a commercial loan and was upset when he learned that his wife would have to co-sign; and that he appeared nervous and upset at times during that day. He asked his employer to be allowed to inform his wife of his termination of employment before any announcement was made but he told his wife nothing about it that evening and left the house on the morning of the day of his death as though he were continuing to work.

The day following the audit and resignation decedent did not appear at an ap-

pointment set for his former office in the afternoon. It was later established that he spent the afternoon of that day in Cresson, Pennsylvania, about twenty miles from his home in Altoona, a place where he had no known business or other connections. From about noon of that day until the time of his death it was established that he visited various taverns, leaving and returning during the course of the afternoon, acting nervously, discussing business and domestic affairs with strangers and expressing discouragement and dissatisfaction with his business and domestic life. He was drinking in these locations during the afternoon, a practice that was not usual for him. All of the testimony with respect to his activities during the afternoon preceding his death exhibited an unusual and unexplained behavior pattern and emotional distress. He died in the automobile collision near Cresson at about 6:30 p. m., that day, shortly after leaving one of the taverns.

Most striking in its impact was the evidence collected by the police after his death that implicated him as the prime suspect in a robbery and murder that occurred on his "debit" or insurance collection route in Altoona on the previous day. The evidence produced by defendant in this regard strongly served to implicate decedent, although it was not shown that decedent knew that the police were seeking him before his death. At that time the police merely desired to question him as a possible witness who might have been the last person to see the victim alive, because of decedent's habit of visiting the victim frequently at the approximate time of the murder. It was only after decedent's death that he became the prime suspect and the remainder of the evidence to inculpate him was discovered. The effect of the evidence produced by defendant was to support strongly the guilt of decedent. It has been held that the presumption against suicide is overcome when decedent is killed shortly after committing or attempting to commit homicide or another serious crime. Webster v. New York Life Insurance Co., 160 La. 854, 107 So. 599.

This leaves the weight of the evidence to be balanced by the trier of the facts. We have established a violent death by external means; we have the Coroner's certificate of accident; we have physical circumstances that are equivocal. From all of this there emerges a balance from which logical inferences may be drawn either way. But the defendant has countered with strong evidence of multiple motives for self-destruction. The defendant's evidence is not sufficient to prove suicide, but it weakens or destroys the effect of any inferences against suicide.

In this case the contract sued upon requires proof of death solely as a result of violent, external and accidental means, independently of other causes. The defendant's policy contains an exclusion for suicide, but defendant does not have the burden of proving suicide. If neither plaintiff has proven accident by a preponderance of the evidence, nor defendant has proven suicide by a preponderance of the evidence, and the case is in the state of equipoise, the plaintiff has failed to meet its burden of proof. Jefferson Standard Life Inc. v. Clemmer, 79 F.2d 724, p. 732 (4th Cir., 1935).

"An even balancing of the evidence on the issue of death by accidental means or death by suicide denotes that plaintiff fails to sustain her burden of proof and the verdict should be for the defendant." Watkins v. Prudential Ins. Co., 315 Pa. 497, at p. 512; 173 A. 644 (1943). See also Waldron v. Metropolitan Life Insurance Co., 347 Pa. 257, 31 A.2d 902 (1943), and DeReeder v. Travelers Ins. Co., 329 Pa. 328, 198 A. 45 (1948).

"Under [(Pennsylvania)] law the beneficiary of an insurance policy containing double indemnity provisions * * * must prove not only that the insured's death was caused by external and accidental means but must also exclude all other causes. Real Estate Trust Company [of Philadelphia] v. Metropolitan Life Insurance Co., 340

Pa. 533, 17 A.2d 416; Johnson v. Kentucky Central Life & Accident Insurance, 144 Pa.Super. 116, 18 A.2d 507." Pierkowskie v. New York Life Insurance Co., 147 F.2d 928, at p. 932 (3rd Cir., 1946).

█ Defendant has raised another ground of defense that the death was not shown to have been caused by accidental means, under the Pennsylvania doctrine that the means are not accidental if they are the result of voluntary and intentional acts of the insured even though an unusual and unexpected result occurs. The defendant points to evidence that deceased was driving without eyeglasses which his operator's license required, that he was exceeding the speed limit, that he knew there was damage to his car which might affect the steering or injure the right front tire, and that he was operating his automobile after drinking a considerable amount of intoxicating liquor and while having a blood alcohol content in excess of that established by a Pennsylvania statutory minimum standard raising a presumption of intoxication. (75 P.S. § 624.1 (3)).

This doctrine has been established in the Pennsylvania law by a long line of decisions. See O'Neill v. Metropolitan Life Ins. Co., 345 Pa. 232, 26 A.2d 898 (1942); Arnstein v. Metropolitan Life Ins. Co., 329 Pa. 158, 196 A. 491 (1938). Hesse v. Travelers' Ins. Co., 299 Pa. 125, 149 A. 96 (1930). It was recently affirmed, with reluctance by the Pennsylvania Superior Court in Beckham v. Prudential Insurance Co., 206 Pa.Super. 488, 214 A.2d 299 (1965), where the Court said:

"Were this a case of first impression in Pennsylvania, we might be inclined to follow the apparent trend of the recent decisions in other jurisdictions but we are bound by the decisions of our Supreme Court. If there is to be any change in the policy of the Commonwealth on this subject, such change will have to come from the Supreme Court or from the legislature. It is our duty to reverse the court below." [1] (p. 497, 214 A.2d p. 303).

We have examined the principal cases of the Pennsylvania appellate courts on this doctrine and nowhere do we find that it has been applied to the operator of an automobile who was killed in a collision. Rather it is applied in those situations where decedent has voluntarily placed himself in a position of great danger, i. e. climbing outside the railing of a bridge while intoxicated despite the warnings of companions, and falling into the waters below and drowning, Kinavey v. Prudential Ins. Co., 149 Pa.Super. 568, 27 A.2d 286 (1942); death while attempting to commit an assault, O'Neill v. Metropolitan Life Ins. Co., (cit. supra) death while under voluntary anaesthesia for surgery; Hesse v. Travelers Ins. Co., (cit. supra); and death from an overdose of self-injected narcotics, Beckham v. Prudential Ins. Co. (cit. supra).

As the Superior Court stated in the *Kinavey* case (cit. supra), the deceased there placed himself in a position of great danger with the consequences not only foreseeable, but almost inevitable. No recovery was allowed under the death by accidental means clause.

We think that the facts of the above cases are so clearly drawn that we cannot escape the conclusion that each of the decedents came to his death as a result of intentional acts with clearly foreseeable consequences. The fact that the consequences were unintended and thus "accidental" does not supply the standard required under the law for death caused solely by accidental means. However, when the distinction is attempted to be applied to the facts of the present case the outlines become blurred. As stated in Metropolitan Life Ins. Co. v. Henkel, 234 F.2d 69 (4th Cir., 1956):

" * * * it is not necessary to go into the distinction between accidental means and accidental results, a dis-

1. See note in 70 Dickinson Law Review 446 (Spring 1966) "Insurance—Accidental Means or Accidental Result as a Measure of Insurer's Liability" by Alan R. Krier.

tinction described by Mr. Justice Cardozo as a 'Serbian Bog', Landress v. Phoenix Mutual Life Ins. Co., 291 U.S. 491, 499, 54 S.Ct. 461, 78 L.Ed. 934, and one which is being repudiated by an 'increasing number of jurisdictions'. Note 166 A.L.R. 473. An injury, or death, results from accidental means as distinguished from an accidental result, within the rule of those courts observing the distinction, 'if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury'. United States Mutual Accident Association v. Barry, 131 U.S. 100, 121, 9 S.Ct. 755, 762, 33 L.Ed. 60. * * * Here the driving of the car was the act which preceded the injury within the rule as above stated; and in that act 'something unforeseen, unexpected and unusual' occurred which produced the injury, i. e. the turning over of the car as a result of the unexpected coming upon the fork in the road with the consequent running off onto the soft shoulder."

Accepting the defendant's version that decedent voluntarily exposed himself to danger, and that, therefore, the means were not accidental, we feel that this distinction is applicable only in those cases where "the insured was killed in the performance of an act so obviously dangerout as normally to result in loss of life [(because)] * * * one is presumed to intend the natural and probable consequences of his act". Metropolitan Life Insurance Co. v. Henkel (cit. supra, 234 F.2d at p. 71). This, to our mind, is the obvious application of the Pennsylvania rule set forth in the above cases.

We do not feel that the distinction may be realistically applied in cases where decedents come to their deaths while operating automobiles, in the absence of unusual circumstances of risks assumed.

But a consideration of this rule illustrates the problem of proof here. There is nowhere in the record any evidence that in the operation of decedent's automobile at the underpass "something

unforeseen, unexpected, and unusual" happened. Decedent's car left a straight road, followed a straight path and collided with a massive visible stone wall, the presence of which the decedent had prior knowledge. The record in this case fails to prove that the result was accidental, regardless of the means employed.

Under all the evidence produced in this case we are of the opinion that plaintiff has failed to meet the burden of proof that decedent met his death, "as a result of bodily injuries sustained solely through external, violent and accidental means directly and independently of all other causes."

The above opinion constitutes the findings of fact and conclusions of law reached by the Court in the trial of this case without a jury, in accordance with Federal Rules of Civil Procedure, Rule 52.

Judgment will be entered for the defendant.